**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

| | |
|---|---|
| Linda Moore, in her capacity as Personal Representative of the ESTATE OF MELISSA M. LAMB, and in her capacity as guardian for JL, a minor; Amber Crawford and Brook Lamb, as Personal Representatives of the ESTATE OF JOEL E. LAMB, JR.; Christopher Todd Tilton, as parent and natural guardian of KT, a minor; Ken Moore and Bree Moore, as parents and natural guardians of AM, a minor; and Steven Walker and Crystal Walker, parents and natural guardians of AW, a minor, | Civil Action No. _____ |
| Plaintiffs. | **COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| vs. | |
| CLUB CAR, LLC and CURTIS INSTRUMENTS, INC., | |
| Defendants. | |

COME NOW PLAINTIFFS, by and through their undersigned Counsel of Record and pursuant to the Federal Rules of Civil Procedure, and file this Complaint for Damages against the Defendants named above, showing the Court as follows:

## NATURE OF THE ACTION

1.    This case arises out of a fire which ignited during the early hours of Easter Sunday morning, April 20, 2014 ("the Fire") at the property located at 215-B Calhoun Drive, Garden City, South Carolina ("the Rental Home"), which had been rented by Melissa M. Lamb, aged 38, ("Mrs. Lamb") and her husband Joel E. Lamb, Jr., aged 46, ("Mr. Lamb").

2.      The Fire originated within an electric Club Car golf car, serial number PJ0841-970288, ("the Subject Golf Car") which, immediately prior to the Fire, had been parked in the rear of the ground floor garage in the Rental Home.

3.      The Subject Golf Car's electronic system and components were manufactured, designed, tested and assembled by Defendants Club Car, LLC and Curtis Instruments, Inc.

4.      The Fire, which began within the Subject Golf Car, spread from the ground floor garage area to the Rental Home, creating a massive conflagration.

5.      The Fire, which began within the Subject Golf Car, directly and proximately caused the tragic, untimely deaths of Mr. and Mrs. Lamb in the Fire, as well as serious physical and mental injuries to minor children JL, then aged 9, ("Minor Plaintiff JL), KT, then aged 15, ("Minor Plaintiff KT"), AM, then aged 8, ("Minor Plaintiff AM") and AW, then aged 15, ("Minor Plaintiff AW"). Except as otherwise noted, Mr. and Mrs. Lamb, Minor Plaintiff JL, Minor Plaintiff KT, Minor Plaintiff AM and Minor Plaintiff AW will be referred to as "the Lamb Group."

6.      These events form the basis of survival, wrongful death, negligence, failure to warn, strict liability in tort and emotional distress claims asserted herein. Plaintiffs also seek actual and consequential damages as well as punitive damages to halt and deter such conduct from taking place in the future.

## THE PARTIES, JURISDICTION, AND VENUE

7.      At all times relevant, Plaintiff Linda M. Moore ("Plaintiff Linda Moore") was and is a citizen of the State of South Carolina, residing in Timmonsville, South Carolina. Plaintiff Linda Moore is the duly appointed and acting Personal Representative of Mrs. Lamb's Estate. Accordingly, she brings the wrongful death and survival claims asserted herein on behalf of Mrs. Lamb and Mrs. Lamb's Estate in her capacity as Personal Representative.

8.    In addition, Plaintiff Linda Moore is grandmother and duly appointed guardian of Minor Plaintiff JL, the son of Mr. and Mrs. Lamb, both deceased. At all times relevant, Minor Plaintiff JL was and is a citizen of the State of South Carolina, residing in Florence County, South Carolina. As detailed herein, Plaintiff Linda Moore brings certain claims on behalf of Minor Plaintiff JL in her capacity as his guardian.

9.    At all times relevant, Plaintiff Amber Crawford ("Plaintiff Crawford") was and is a citizen of the State of South Carolina, residing in Florence County, South Carolina. Plaintiff Crawford is a duly appointed and acting Personal Representative of Mr. Lamb's Estate.

10.    At all times relevant, Plaintiff Brook Lamb ("Plaintiff Brook Lamb") was and is a citizen of the State of South Carolina, residing in Florence County, South Carolina. Plaintiff Brook Lamb is a duly appointed and acting Personal Representative of Mr. Lamb's Estate.

11.    Plaintiff Crawford and Plaintiff Brook Lamb bring the wrongful death and survival claims asserted herein on behalf of Mr. Lamb and Mr. Lamb's Estate in their respective capacities as Personal Representatives.

12.    At all times relevant, Plaintiff Christopher Todd Tilton ("Plaintiff Tilton") was and is a citizen of the State of South Carolina, residing in Florence County, South Carolina. Plaintiff Tilton is the surviving father and natural guardian of Minor Plaintiff KT, his minor daughter with his now-deceased former wife, Mrs. Lamb.

13.    At all times relevant, Minor Plaintiff KT was and is a citizen of the State of South Carolina, residing in Florence County, South Carolina.

14.    Plaintiff Tilton brings the claims asserted herein on behalf of his daughter, Minor Plaintiff KT.

15.     At all times relevant, Plaintiff Ken Moore ("Plaintiff Ken Moore") was and is a citizen of the State of South Carolina, residing in Florence County, South Carolina.

16.     At all times relevant, Plaintiff Bree Moore ("Plaintiff Bree Moore") was and is a citizen of the State of South Carolina, residing in Florence County, South Carolina.

17.     Plaintiff Ken Moore and Plaintiff Bree Moore are the parents and natural guardians of Minor Plaintiff AM.

18.     At all times relevant, Minor Plaintiff AM was and is a citizen of the State of South Carolina, residing in Florence County, South Carolina.

19.     Plaintiffs Ken Moore and Bree Moore bring the claims asserted herein on behalf of their daughter, Minor Plaintiff AM.

20.     At all times relevant, Plaintiff Steven Walker ("Plaintiff Steven Walker") was and is a citizen of the State of South Carolina, residing in Florence County, South Carolina.

21.     At all times relevant, Plaintiff Crystal Walker ("Plaintiff Crystal Walker") was and is citizen of the State of South Carolina, residing in Florence County, South Carolina.

22.     Plaintiff Steven Walker and Plaintiff Crystal Walker are the parents and natural guardians of Minor Plaintiff AW.

23.     At all times relevant, Minor Plaintiff AW was and is a citizen of the State of South Carolina, residing in Florence County, South Carolina.

24.     Plaintiff Steven Walker and Plaintiff Crystal Walker bring the claims asserted herein on behalf of their daughter, Minor Plaintiff AW.

25.     Defendant Club Car, LLC ("Club Car") is a Delaware limited liability company with its corporate headquarters and principal place of business located at 4125 Washington Road, Evans, Georgia 30809. Defendant Club Car is registered to transact business in this State with the

South Carolina Secretary of State and its appointed agent for service of process is CT Corporation System, 2 Office Park Court, Suite 103, Columbia, South Carolina 29223. At all times relevant herein, Defendant Club Car conducted substantial business in South Carolina and the cause of action arises out of a tort committed in whole or in part within South Carolina and which resulted in injuries and death in South Carolina, and, therefore, personal jurisdiction is proper under South Carolina Code § 36-2-802 and South Carolina Code § 36-2-803.

26.    Defendant Curtis Instruments, Inc. ("Curtis") is a New York corporation with its corporate headquarters and principal place of business located at 200 Kisco Avenue, Mt. Kisco, New York, 10549. Defendant Curtis is not registered to transact business in this State and pursuant to South Carolina Code § 15-9-245 can be served service of process through the South Carolina Secretary of State 1205 Pendleton Street, Suite 525 Columbia, South Carolina 29201. At all times relevant herein, Defendant Curtis conducted substantial business in South Carolina and the cause of action arises out of a tort committed in whole or in part within South Carolina and which resulted in injuries and death in South Carolina, and, therefore, personal jurisdiction is proper under South Carolina Code § 36-2-802 and South Carolina Code § 36-2-803.

27.    This Honorable Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1332.

28.    Venue of this action properly lies in the District of South Carolina, pursuant to 28 U.S.C. § 1391(a), and within this division, pursuant to L.R. 3.01, as it is the judicial district and division in which a substantial part of the events or omissions giving rise to the claim occurred.

## **CONDITIONS PRECEDENT**

29.    All conditions precedent to the filing of this action and to the Plaintiffs' right to the relief sought have occurred, have been performed, or have been excused.

## FACTS COMMON TO ALL COUNTS

30.    Plaintiffs adopt and re-allege each prior paragraph, where relevant, as if set forth fully herein.

31.    Prior to April 19, 2014, Mr. and Mrs. Lamb made arrangements with the owners of the Rental Property to vacation there over the Easter holiday.

32.    On or about April 19, 2014, Mr. and Mrs. Lamb, accompanied by Minor Plaintiffs KT, JL, AM and AW, traveled to Garden City, South Carolina to stay at the Rental Home for the Easter holiday.

33.    Prior to the Fire, the Rental Home was a three story structure.

34.    Prior to the Fire, the driveway of the Rental Home was connected to a covered garage area located on the ground floor.

35.    Prior to the Fire, and when facing the property from the street, the covered garage area on the ground floor of the Rental Home was well ventilated.

36.    Prior to the Fire, and when facing the property from the street, the covered garage area on the ground floor of the Rental Home was enclosed by walls east and south side and flanked by shrubbery and wooden lattice work on the west.

37.    Prior to the Fire, the main staircase, the only means of ingress and egress from the Rental Home was located on the east side of the ground floor covered garage.

38.    Prior to the Fire, the staircase from ground floor covered garage led to the second floor of the Rental Home.

39.     Prior to the Fire, the second floor of the Rental Home was flanked by decks on both the front and rear of the building, and likewise contained a bedroom, two bathrooms, the kitchen, the living room and a staircase to the third floor.

40.     Prior to the Fire, the third floor of the Rental Home was also flanked by decks on both the front and rear of the building, and contained, inter alia, three bedrooms.

41.     After arriving in Garden City, South Carolina, the Lamb Party settled in at the Rental Home.

42.     After arriving at the Rental Home and unloading their belongings, Mr. and Mrs. Lamb had occasion to rent the Subject Golf Car from Woody's Beach Rentals ("Woody's"), a local business engaged in renting golf cars.

43.     At all times relevant, the Subject Golf Car, an electric 4 passenger car, was internally designated by Woody's as "CC#3."

44.     On April 19, 2014, and at all times relevant, the Subject Golf Car was equipped with an OEM onboard automatic battery charging device.

45.     The Subject Golf Car and its systems and components at issue, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, onboard automatic battery charging device, batteries and DC Motor Controller, was in essentially the same condition in all pertinent respects at the time it was leased from Woody's by Mr. and Mrs. Lamb as it was at the time it was manufactured, designed, and/or assembled by the Defendants.

46.     Woody's purchased the Subject Golf Car from Ocean Lakes Family Campground ("Ocean Lakes"), a vacation resort located in Myrtle Beach, South Carolina, on or about September 2, 2013.

47.    The Subject Golf Car and its systems and components at issue, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller, was in essentially the same condition in all pertinent respects at the time it was sold by Ocean Lakes to Woody's as it was at the time it was manufactured, designed, and/or assembled by the Defendants.

48.    Ocean Lakes initially purchased the Subject Golf Car as new from Defendant Club Car in May 2008.

49.    The Subject Golf Car and its systems and components at issue, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller, was in essentially the same condition in all pertinent respects at the time it was acquired by Ocean Lakes as it was at the time it was manufactured, designed, and/or assembled by the Defendants.

50.    On the afternoon of April 19, 2014, after Mr. and Mrs. Lamb rented the Subject Golf Car from Woody's, members of the Lamb Group drove the vehicle around the portion of Garden City in close vicinity to the Rental Home.

51.    On the evening of April 19, 2014 the Lamb Group enjoyed dinner together.

52.    Before the Lamb Group ate dinner together , the AC cord connected to the Subject Golf Car's onboard battery charging device had been properly plugged into an outlet located in the Rental Home's ground floor, covered garage in order to charges its batteries.

53.    While the Lamb Group was enjoying dinner on the evening of April 19, 2014, a period during which the AC cord connected to the Subject Golf Car's onboard battery charging device had been properly plugged into an outlet located in the Rental Home's ground floor, the Subject Golf Car and its onboard battery charging device were properly and adequately ventilated.

54.    At the time the Lamb Party finished dinner on the evening of April 19, 2014, the AC cord connected to the Subject Golf Car's onboard battery charging device was properly unplugged from the outlet located in the Rental Home's covered, ground floor garage.

55.    On the evening of April 19, 2014, after finishing dinner, and after the AC cord connected to the Subject Golf Car's onboard battery charging device was properly unplugged from the outlet located in the Rental Home's covered, ground floor garage, Minor Plaintiffs KT, AM and AW boarded the Subject Golf Car.

56.    After boarding the Subject Golf Car, Minor Plaintiffs KT, AM and AW left the Rental Home on the vehicle, intending to travel to the Pier at Garden City, located approximately one mile from the Rental Home.

57.    While traveling on the Subject Golf Car from Rental Home towards their intended destination at the Pier at Garden City, it began to rain, prompting Minor Plaintiffs KT, AM and AW to abandon their plans and return on the Subject Golf Car to the Rental Home.

58.    After Minor Plaintiffs KT, AM and AW returned on the Subject Golf Car from their stymied journey to the Pier at Garden City, the AC cord connected to the Subject Golf Car's onboard battery charging device was, once more, properly plugged into an outlet located in the Rental Home's ground floor covered garage in order to charges its batteries.

59.    From the point in time, subsequent to the return of Minor Plaintiffs KT, AM and AW to the Rental Home, that the Subject Golf Car and its onboard battery charging device were properly reconnected to the outlet in the Rental Home's ground floor covered garage, to the point in time at which the conflagration of the Fire occurred, the AC cord connected to the Subject Golf Car's onboard battery charging device was properly plugged into an outlet in said garage.

60.     At the time, subsequent to the return of Minor Plaintiffs KT, AM and AW to the Rental Home, that the Subject Golf Car and its onboard battery charging device were properly reconnected to the outlet in the Rental Home's ground floor covered garage, the Subject Golf Car and its onboard battery charging device were properly and adequately ventilated.

61.     From the point in time, subsequent to the return of Minor Plaintiffs KT, AM and AW to the Rental Home, that the Subject Golf Car and its onboard battery charging device were properly reconnected to the outlet in the Rental Home's ground floor covered garage, to the point in time at which the conflagration of the Fire occurred, the Subject Golf Car and its onboard battery charging device were properly and adequately ventilated.

62.     From the point in time, subsequent to the return of Minor Plaintiffs KT, AM and AW to the Rental Home, that the Subject Golf Car and its onboard battery charging device were properly reconnected to the outlet in the Rental Home's ground floor covered garage, to the point in time at which the conflagration of the Fire occurred, the Subject Golf Car remained inside the Rental Home's ground floor covered garage.

63.     From the point in time, subsequent to the return of Minor Plaintiffs KT, AM and AW to the Rental Home, that the Subject Golf Car and its onboard battery charging device were properly reconnected to the outlet in the Rental Home's ground floor covered garage, to the point in time at which the conflagration of the Fire occurred, none of the vehicle's systems and components at issue, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, onboard automatic battery charging device, batteries and DC Motor Controller, were exposed to rain or liquids.

64.     At all times relevant, the Subject Golf Car was not altered or misused by Mr. Lamb.

65.    From the point in time, subsequent to the return of Minor Plaintiffs KT, AM and AW to the Rental Home, that the Subject Golf Car and its onboard battery charging device were properly reconnected to the outlet in the Rental Home's ground floor covered garage, to the point in time at which the conflagration of the Fire occurred, the Subject Golf Car was not operated, altered, used or misused by Mr. Lamb.

66.    At all times relevant, the Subject Golf Car was not altered or misused by Mrs. Lamb.

67.    From the point in time, subsequent to the return of Minor Plaintiffs KT, AM and AW to the Rental Home, that the Subject Golf Car and its onboard battery charging device were properly reconnected to the outlet in the Rental Home's ground floor covered garage, to the point in time at which the conflagration of the Fire occurred, the Subject Golf Car was not operated, altered, used or misused by Mrs. Lamb.

68.    At all times relevant, the Subject Golf Car was not altered or misused by Minor Plaintiff JL.

69.    From the point in time, subsequent to the return of Minor Plaintiffs KT, AM and AW to the Rental Home, that the Subject Golf Car and its onboard battery charging device were properly reconnected to the outlet in the Rental Home's ground floor covered garage, to the point in time at which the conflagration of the Fire occurred, the Subject Golf Car was not operated, altered, used or misused by Minor Plaintiff JL.

70.    At all times relevant, the Subject Golf Car was not altered or misused by Minor Plaintiff KT.

71.    From the point in time, subsequent to the return of Minor Plaintiffs KT, AM and AW to the Rental Home, that the Subject Golf Car and its onboard battery charging device were

properly reconnected to the outlet in the Rental Home's ground floor covered garage, to the point in time at which the conflagration of the Fire occurred, the Subject Golf Car was not operated, altered, used or misused by Minor Plaintiff KT.

72.    At all times relevant, the Subject Golf Car was not altered or misused by Minor Plaintiff AM.

73.    From the point in time, subsequent to the return of Minor Plaintiffs KT, AM and AW to the Rental Home, that the Subject Golf Car and its onboard battery charging device were properly reconnected to the outlet in the Rental Home's ground floor covered garage, to the point in time at which the conflagration of the Fire occurred, the Subject Golf Car was not operated, altered, used or misused by Minor Plaintiff AM.

74.    At all times relevant, the Subject Golf Car was not altered or misused by Minor Plaintiff AW.

75.    From the point in time, subsequent to the return of Minor Plaintiffs KT, AM and AW to the Rental Home, that the Subject Golf Car and its onboard battery charging device were properly reconnected to the outlet in the Rental Home's ground floor covered garage, to the point in time at which the conflagration of the Fire occurred, the Subject Golf Car was not operated, altered, used or misused by Minor Plaintiff AW.

76.    The Subject Golf Car and its systems and components at issue, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller, was in essentially the same condition in all pertinent respects at the time on the evening of April 19, 2014 that it was properly reconnected to the outlet in the Rental Home's ground floor covered garage as it was at the time it was manufactured, designed, and/or assembled by the Defendants.

77.    The Subject Golf Car and its systems and components at issue, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller, was in essentially the same condition in all pertinent respects at the time on the evening of April 19, 2014 that the conflagration of the Fire occurred as it was at the time it was manufactured, designed, and/or assembled by the Defendants.

78.    The Subject Golf Car and its systems and components at issue, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller, was in essentially the same condition in all pertinent respects at the time on the evening of April 19, 2014 that it was properly reconnected to the outlet in the Rental Home's ground floor covered garage as it was at the time it was manufactured, designed, and/or assembled by the Defendants.

79.    Subsequent to the return of Minor Plaintiffs KT, AM and AW to the Rental Home, all members of the Lamb Party eventually went to sleep at the Rental Home.

80.    After the Subject Golf Car and its onboard battery charging device were properly reconnected to the outlet in the Rental Home's ground floor covered garage, which took place subsequent to the return of Minor Plaintiffs KT, AM and AW to the Rental Home, and as a result of their design, manufacture and assembly, the electrical systems and componentry within the Subject Golf Car experienced arcing, sparking and the unwanted, unintended energization of certain internal circuits during the charging process.

81.    After the Subject Golf Car and its onboard battery charging device were properly reconnected to the outlet in the Rental Home's ground floor covered garage, which took place subsequent to the return of Minor Plaintiffs KT, AM and AW to the Rental Home, and as a result

of their design, manufacture and assembly, the electrical systems and componentry within the Subject Golf Car ignited, directly and proximately causing the Fire.

82.     By the early morning hours of April 20, 2014 the conflagration, caused by the design, manufacture and assembly of the electrical systems and componentry within the Subject Golf Car, had spread from ground floor garage area where the Subject Golf Car was parked to other portions of the Rental Home.

83.     Mrs. Lamb, who was sleeping in a third floor bedroom at the Rental Home, was awoken during the early morning hours of April 20, 2014 as result of the spread of the Fire from the Subject Golf Car to the Rental Home.

84.     Upon awaking, Mrs. Lamb took action to alert the Minor Plaintiffs, rousing each of the children, notifying them for the first time of the Fire.

85.     After being awoken by her mother, and in order to escape from the Rental Home, Minor Plaintiff KT then descended a burning staircase leading from the second floor of the Rental Home to the ground floor garage area below.

86.     While exiting the Rental Home via the staircase to the ground floor garage area Minor Plaintiff KT sustain severe burns to her hands and feet.

87.     Upon reaching the bottom of the staircase, Minor Plaintiff KT observed the Subject Golf Car as it was engulfed in flames and then proceeded to the driveway of the Rental Home.

88.     Due to the smoke and flames present in the staircase leading from the second floor to the ground floor garage area, Minor Plaintiffs JL, AM and AW were unable to exit the Rental Home.

89.     Minor Plaintiffs JL, AM and AW instead proceeded to the exterior second floor deck located on the front of the Rental Home.

90.    Minor Plaintiff KT then positioned herself below the exterior second floor deck located on the front of the Rental Home and caught Minor Plaintiffs JL and AM, who were assisted in jumping from the burning structure by Minor Plaintiff AW.

91.    Having aided Minor Plaintiffs JL and AM jumping off of the exterior second floor deck located on the front of the Rental Home, Minor Plaintiff AW herself then jumped to the driveway below, having her fall broken with assistance from Minor Plaintiff KT.

92.    Upon reaching the exterior of the Rental Home, Minor Plaintiff AW then observed the Subject Golf Car engulfed in flames while inside the ground floor garage area.

93.    Neighbors came to the assistance of the Minor Plaintiffs while emergency responders were in route. Upon information and belief, these neighbors prevented Minor Plaintiff KT from re-entering the Rental Home to find Mrs. Lamb.

94.    Mr. Lamb, who had been awoken by the Fire, also attempted to exit the structure to escape.

95.    Due to the size and progress of the Fire, and the lack of other means of egress, Mr. Lamb was forced to jump from the third-floor exterior deck on the front of the Rental Home.

96.    As witnessed by, *inter alia,* Minor Plaintiff KT, Mr. Lamb jumped from the third floor exterior deck on the front of the Rental Home, landing on his head and back on the concrete driveway below.

97.    After landing on the concrete driveway Mr. Lamb was unresponsive to family members or emergency personnel.

98.    After waking the Minor Plaintiffs, Mrs. Lamb also attempted to escape from the Rental Home.

99.    Despite her efforts to escape, Mrs. Lamb was unable to exit the building due to the effects of the Fire and as a result she perished on the second floor of the Rental Home.

100.    After the Minor Plaintiffs had exited the Rental Home, Minor Plaintiffs JL and KT were transported to Grand Strand Regional Medical Center by emergency responders.

101.    After being forced to jump from the third-floor exterior deck due to the effects of the Fire, Mr. Lamb was transported to Grand Strand Regional Medical Center by emergency responders.

102.     After the Minor Plaintiffs had exited the Rental Home, Minor Plaintiffs AM and AW were transported to Waccamaw Community Hospital by emergency responders.

103.    After initially being treated at Grand Strand Regional Medical Center, Minor Plaintiff KT was then transferred to the Joseph M. Still Burn Center in August, Georgia, where she underwent skin grafts and other specialized procedures to treat her severe burn injuries caused by the Fire.

104.    As a direct and proximate result of the Fire caused by the design, manufacture and assembly of the electrical systems and componentry within the Subject Golf Car, Mrs. Lamb sustained extensive pre-death burns, pain, suffering and trauma and died on the morning of April 20, 2014 due to asphyxia, carbon monoxide inhalation and catastrophic burn injuries.

105.    As a direct and proximate result of the Fire caused by the design, manufacture and assembly of the electrical systems and componentry within the Subject Golf Car, Mr. Lamb sustained head, neck, spine, lower extremity and internal injuries and on April 21, 2014 succumbed to the devastating impact of the traumatic brain injury he sustained during the Fire.

106.    As a direct and proximate result of the Fire caused by the design, manufacture and assembly of the electrical systems and componentry within the Subject Golf Car, Minor Plaintiff JL sustained burns, smoke inhalation, severe emotional distress and the loss of both his parents.

107.    As a direct and proximate result of the Fire caused by the design, manufacture and assembly of the electrical systems and componentry within the Subject Golf Car, Minor Plaintiff KT sustained severe second degree burns, smoke inhalation, severe emotional distress and the loss of her mother and step-father.

108.    As a direct and proximate result of the Fire caused by the design, manufacture and assembly of the electrical systems and componentry within the Subject Golf Car, Minor Plaintiff AM sustained burns, smoke inhalation and severe emotional distress.

109.    As a direct and proximate result of the Fire caused by the design, manufacture and assembly of the electrical systems and componentry within the Subject Golf Car, Minor Plaintiff AW sustained burns, smoke inhalation and severe emotional distress.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
**Strict Products Liability - Survival Action for Melissa M. Lamb,**
**S.C. Code Ann. § 15-5-90**

110.    Plaintiffs adopt and re-allege each prior paragraph, where relevant, as if set forth fully herein.

111.    Plaintiff Linda Moore brings this cause of action as personal representative of the Estate of Melissa M. Lamb.

112.    At all relevant times relevant, there was in full force and effect certain statutes of the State of South Carolina pertaining to Sellers of Defective Products as set forth in Section 15-73-10 et seq. of the South Carolina Code Ann. (1976, as amended).

113.    Pursuant to S.C. Code § 15-73-10 et seq., Defendants Club Car and Curtis are strictly liable in tort, irrespective of privity, for manufacturing, designing, assembling and placing a defective and unreasonably dangerous product in the stream of commerce to injure Plaintiffs.

114.    Defendant Club Car had an active role in the manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller.

115.    Defendant Curtis had an active role in the manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller.

116.    Subject Golf Car and its systems and components, were neither merchantable nor reasonably suited to the use intended when placed into commerce by Defendants.

117.    At all relevant times, including when the incident alleged herein occurred, Subject Golf Car and its systems and components, were used in an intended and/or foreseeable manner

118.    Mrs. Lamb neither misused nor materially altered the Subject Golf Car and its electrical systems and components, and at the time of the incident complained of herein, the Subject Golf Car and its systems and components, were in the same or substantially similar condition that they were in at the time of sale.

119.    The Subject Golf Car and its systems and components failed to perform in a manner reasonably expected in light of their nature and intended function.

120.    Additionally, the risks inherent in the design the Subject Golf Car and its electrical systems and components outweigh the utility of the products as designed.

121.    Defendants Club Car and Curtis manufactured designed, assembled and placed the Subject Golf Car, a defective and unreasonably dangerous product, in the stream of commerce and failed to:

(i)    Properly design, manufacture and assemble the main electronics and battery compartment to safely and sufficiently resist the foreseeable intrusion of corrosive moisture and salt air in order to prevent the dangerous, unintended flow of electric current along unintended paths;

(ii)    Properly design, manufacture and assemble the main electronics and battery compartment to safely and sufficiently to prevent dangerous, unintended arcing and sparking;

(iii)    Properly design, manufacture and assemble the main electronics and battery compartment to prevent and/or contain the spread of excessive heat and energy;

(iv)    Properly design, manufacture and assemble the main electronics and battery compartment to prevent insulation failure, chaffing, loose connections and high resistance;

(v)    Properly design, manufacture and assemble the DC motor controller to safely and sufficiently resist the foreseeable intrusion of corrosive moisture and salt air in order to prevent the dangerous, unintended flow of electric current along unintended paths;

(vi)    Properly design, manufacture and assemble the DC motor controller to safely and sufficiently to prevent dangerous, unintended arcing and sparking;

(vii)    Properly design, manufacture and assemble the DC motor controller to prevent and/or contain the spread of excessive heat and energy;

(viii)    Properly design, manufacture and assemble the DC motor controller to prevent insulation failure, chaffing, loose connections and high resistance;

(ix)     Properly design, manufacture and assemble the wiring and insulation within the main electronics and battery compartment to resist the foreseeable intrusion of corrosive moisture and salt air in order to prevent the dangerous, unintended flow of electric current along unintended paths;

(x)     Properly design, manufacture and assemble the wiring and insulation within the main electronics and battery compartment to sufficiently prevent dangerous, unintended arcing and sparking;

(xi)     Properly design, manufacture and assemble the wiring and insulation within the main electronics and battery compartment to prevent and/or contain the spread of excessive heat and energy;

(xii)     Properly design, manufacture and assemble the wiring and insulation within the main electronics and battery compartment to prevent insulation failure, chaffing, loose connections and high resistance;

(xiii)   Properly design, manufacture and assemble the Subject Golf Car in a manner to prevent the unwanted, dangerous energization of certain internal circuits during the charging process;

(xiv)    Adopt and implement adequate safety hierarchy procedures and policies in design, manufacture and distribution of the Subject Golf Car;

(xv)     Adopt and implement adequate safety failing to incorporate safeguards into the design, manufacture and distribution of the Subject Golf Car; and

(xvi)    on such other and further particulars as the evidence may show.

122.    As a direct and proximate result of the defective condition of the Subject Golf Car and its internal systems and components, the electrical systems and componentry within the Subject Golf Car ignited on April 20, 2014.

123.    The ignition caused by defective condition of the Subject Golf Car and its internal systems and components was the direct and proximate cause of the April 20, 2014 Fire at 215-B Calhoun Drive, Garden City, South Carolina.

124.    The ignition caused by defective condition of the Subject Golf Car and its internal systems and components directly and proximately caused Mrs. Lamb to:

(i)      suffer excruciating personal injuries;

(ii)     endure physical pain and suffering;

(iii)    suffer emotional distress, mental anguish, terror, knowledge of bodily injury and impending death;

(iv)     loss of income;

(v)      funeral expenses; and

(vi)     suffer other such injuries, damages, and particulars as the evidence may show.

125.    By reason of the foregoing, Plaintiff Linda Moore, on behalf of Mrs. Lamb's Estate, is entitled to recover for all general and special damages proximately caused by Defendants, and the defective condition of their products when sold.

126.    WHEREFORE, Plaintiff Linda Moore, on behalf of Mrs. Lamb's Estate Plaintiff Lamb, demands judgment against Defendants Club Car and Curtis, jointly and severally, for all actual and compensatory damages suffered as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, and all

costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

## SECOND CAUSE OF ACTION
### Negligence/Gross Negligence - Survival Action for Melissa M. Lamb,
### S.C. Code Ann. § 15-5-90
### (Against All Defendants)

127.    Plaintiffs adopt and re-allege each prior paragraph, where relevant, as if set forth fully herein.

128.    Plaintiff Linda Moore brings this cause of action as personal representative of the Estate of Melissa M. Lamb.

129.    Defendant Club Car had an active role in the manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller.

130.    Defendant Curtis had an active role in the manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller.

131.    Defendant Club Car owed Mrs. Lamb a duty of reasonable care in manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller.

132.    Defendant Curtis owed Mrs. Lamb a duty of reasonable care in manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller.

133.    Subject Golf Car and its systems and components, were neither merchantable nor reasonably suited to the use intended when placed into commerce by Defendants.

134.    At all relevant times, including when the incident alleged herein occurred, Subject Golf Car and its systems and components, were used in an intended and/or foreseeable manner

135.    The Mrs. Lamb neither misused nor materially altered the Subject Golf Car and its electrical systems and components, and at the time of the incident complained of herein, the Subject Golf Car and its systems and components, were in the same or substantially similar condition that they were in at the time of sale.

136.    The Subject Golf Car and its systems and components failed to perform in a manner reasonably expected in light of their nature and intended function.

137.    Additionally, the risks inherent in the design the Subject Golf Car and its electrical systems and components outweigh the utility of the products as designed.

138.    Defendants Club Car and Curtis were negligent, grossly negligent, willful, wanton, reckless and careless in manufacturing, designing, assembling and placing the Subject Golf Car, a defective and unreasonably dangerous product, in the stream of commerce and breach their respective duties to Mrs. Lamb by:

(i)    Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the main electronics and battery compartment to safely and sufficiently resist the foreseeable intrusion of corrosive moisture and salt air in order to prevent the dangerous, unintended flow of electric current along unintended paths;

(ii)    Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the main electronics and battery compartment to safely and sufficiently to prevent dangerous, unintended arcing and sparking;

(iii)    Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the main electronics and battery compartment to prevent and/or contain the spread of excessive heat and energy;

(iv)    Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the main electronics and battery compartment to prevent insulation failure, chaffing, loose connections and high resistance.;

(v)    Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the DC motor controller to safely and sufficiently resist the foreseeable intrusion of corrosive moisture and salt air in order to prevent the dangerous, unintended flow of electric current along unintended paths;

(vi)    Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the DC motor controller to safely and sufficiently to prevent dangerous, unintended arcing and sparking;

(vii)    Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the DC motor controller to prevent and/or contain the spread of excessive heat and energy;

(viii)    Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the DC motor controller to prevent insulation failure, chaffing, loose connections and high resistance;

(ix)    Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the wiring and insulation within the main electronics and battery compartment to resist the foreseeable intrusion of corrosive moisture and salt air in order to prevent the dangerous, unintended flow of electric current along unintended paths;

(x)     Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the wiring and insulation within the main electronics and battery compartment to sufficiently to prevent dangerous, unintended arcing and sparking;

(xi)     Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the wiring and insulation within the main electronics and battery compartment to prevent and/or contain the spread of excessive heat and energy;

(xii)     Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the wiring and insulation within the main electronics and battery compartment to prevent insulation failure, chaffing, loose connections and high resistance;

(xiii)     Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the Subject Golf Car in a manner to prevent the unwanted, dangerous energization of certain internal circuits during the charging process;

(xiv)     Failing to adopt and implement adequate safety hierarchy procedures and policies in design, manufacture and distribution of the Subject Golf Car;

(xv)     Failing and implement adequate safety failing to incorporate safeguards into the design, manufacture and distribution of the Subject Golf Car; and

(xvi)     on such other and further particulars as the evidence may show.

139.     As a direct and proximate result of the defective condition of the Subject Golf Car and its internal systems and components, the electrical systems and componentry within the Subject Golf Car ignited on April 20, 2014.

140.     The ignition caused by defective condition of the Subject Golf Car and its internal systems and components was the direct and proximate cause of the April 20, 2014 Fire at 215-B Calhoun Drive, Garden City, South Carolina.

141.    The ignition caused by defective condition of the Subject Golf Car and its internal systems and components directly and proximately caused Mrs. Lamb to:

(i)    suffer excruciating personal injuries;

(ii)    endure physical pain and suffering;

(iii)    suffer emotional distress, mental anguish, terror, knowledge of bodily injury and impending death;

(iv)    loss of income;

(v)    funeral expenses; and

(vi)    suffer other such injuries, damages, and particulars as the evidence may show.

142.    By reason of the foregoing, Plaintiff Linda Moore, on behalf of Mrs. Lamb's Estate, is entitled to recover for all general and special damages proximately caused by Defendants, and the defective condition of their products when sold.

143.    WHEREFORE, Plaintiff Linda Moore, on behalf of Mrs. Lamb's Estate Plaintiff Lamb, demands judgment against Defendants Club Car and Curtis, jointly and severally, for all actual and compensatory damages suffered as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

### THIRD CAUSE OF ACTION
**Failure To Warn - Survival Action for Melissa M. Lamb,  S.C. Code Ann. § 15-5-90
(Against All Defendants)**

144.    Plaintiffs adopt and re-allege each prior paragraph, where relevant, as if set forth fully herein.

145.    Plaintiff Linda Moore brings this cause of action as personal representative of the Estate of Melissa M. Lamb.

146.    Defendant Club Car, which had an active role in the manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller, owed a duty to give adequate warnings of the dangers of which it knew or reasonably should have known could arise from the use of its respective products and components.

147.    Defendant Club Car had actual or constructive knowledge that the intended use of the Subject Golf Car created a danger for the ultimate consumer during the foreseeable and anticipated use of the product it sold.

148.    Defendant Club Car therefore had a duty to warn of the foreseeable dangers arising from the use of the Subject Vehicle to inform third persons of the facts which make the Subject Vehicle dangerous to users and consumers.

149.    Specifically,

(i)    Defendant Club Car knew or reasonably should have known that the design, manufacture and assembly of the main electronics and battery compartment did not prevent dangerous, unintended arcing and sparking.

(ii)    Defendant Club Car knew or reasonably should have known that the design, manufacture and assembly of the main electronics and battery compartment did not prevent or contain the spread of excessive heat and energy.

(iii)    Defendant Club Car knew or reasonably should have known that the design, manufacture and assembly of the main electronics and battery compartment did not prevent insulation failure, chaffing, loose connections and high resistance.

(iv)     Defendant Club Car knew or reasonably should have known that the design, manufacture and assembly of the DC motor controller to safely and sufficiently resist the foreseeable intrusion of corrosive moisture and salt air in order to prevent the dangerous, unintended flow of electric current along unintended paths.

150.     Defendant Club Car breached these respective duties by failing to provide adequate warnings of the potential risks of Subject Golf Car and by failing to adequately communicate those warnings to the ultimate consumer.

151.     Defendant Curtis, which had an active role in the manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller, owed a duty to give adequate warnings of the dangers of which it knew or reasonably should have known could arise from the use of its respective products and components.

152.     Defendant Curtis had actual or constructive knowledge that the intended use of the Subject Golf Car created a danger for the ultimate consumer during the foreseeable and anticipated use of the product it sold.

153.     Defendant Curtis therefore had a duty to warn of the foreseeable dangers arising from the use of the Subject Vehicle to inform third persons of the facts which make the Subject Vehicle dangerous to users and consumers.

154.     Specifically,

(i)     Defendant Curtis knew or reasonably should have known that the design, manufacture and assembly of the main electronics and battery compartment did not prevent dangerous, unintended arcing and sparking.

(ii)     Defendant Curtis knew or reasonably should have known that the design,

manufacture and assembly of the main electronics and battery compartment did not prevent or contain the spread of excessive heat and energy.

(iii)     Defendant Curtis knew or reasonably should have known that the design, manufacture and assembly of the main electronics and battery compartment did not prevent insulation failure, chaffing, loose connections and high resistance.

(iv)     Defendant Curtis knew or reasonably should have known that the design, manufacture and assembly of the DC motor controller to safely and sufficiently resist the foreseeable intrusion of corrosive moisture and salt air in order to prevent the dangerous, unintended flow of electric current along unintended paths.

155.     Defendant Curtis breached these respective duties by failing to provide adequate warnings of the potential risks of Subject Golf Car and by failing to adequately communicate those warnings to the ultimate consumer.

156.     The Defendants' failure to warn of the dangers associated with the Subject Golf Car directly and proximately caused Mrs. Lamb to:

(i)     suffer excruciating personal injuries;

(ii)     endure physical pain and suffering;

(iii)     suffer emotional distress, mental anguish, terror, knowledge of bodily injury and impending death;

(iv)     loss of income;

(v)     funeral expenses; and

(vi)     suffer other such injuries, damages, and particulars as the evidence may show.

157.    By reason of the foregoing, Plaintiff Linda Moore, on behalf of Mrs. Lamb's Estate, is entitled to recover for all general and special damages proximately caused by Defendants, and the defective condition of their products when sold.

158.    WHEREFORE, Plaintiff Linda Moore, on behalf of Mrs. Lamb's Estate demands judgment against Defendants Club Car and Curtis, jointly and severally, for all actual and compensatory damages suffered as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

### FOURTH CAUSE OF ACTION
**Punitive Damages - Survival Action for Melissa M. Lamb,  S.C. Code Ann. § 15-5-90 (Against All Defendants)**

159.    Plaintiffs adopt and re-allege each prior paragraph, where relevant, as if set forth fully herein.

160.    Plaintiff Linda Moore brings this cause of action as personal representative of the Estate of Melissa M. Lamb.

161.    The actions and inactions of the Defendants were of such a character as to constitute a pattern or practice of willful, wanton and reckless misconduct causing substantial harm and resulting in damages to Mrs. Lamb.

162.    More specifically, the Defendants' acted with a conscious and flagrant disregard for the rights and safety of Mrs. Lamb, and/or deliberately engaged in willful, wanton and reckless disregard for the life and safety of Mrs. Lamb.

163.    By reason of the foregoing, the Defendants are liable for punitive and exemplary damages.

164.     WHEREFORE, Plaintiff Linda Moore, on behalf of Mrs. Lamb's Estate, demands judgment against Defendants Club Car and Curtis, jointly and severally, for punitive and exemplary damages, plus interest, costs and attorneys' fees for having to bring this action, and such other and further relief as this Honorable Court or jury may deem just and proper.

## FIFTH CAUSE OF ACTION
### Wrongful Death of Melissa M. Lamb, S.C. Code Ann. § 15-51-10
### (Against All Defendants)

165.     Plaintiffs incorporate by reference all allegations contained in the Paragraphs above, as if set forth verbatim herein.

166.     Plaintiff Linda Moore brings this cause of action as personal representative of the Estate of Melissa M. Lamb.

167.     Defendant Club Car had an active role in the manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller.

168.     Defendant Curtis had an active role in the manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller.

169.     Defendant Club Car owed Plaintiff's decedent Mrs. Lamb a duty of reasonable care in manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controllers so as to prevent injury or death to Plaintiff's decedent and others similarly situated.

170.     Defendant Curtis owed Plaintiff's decedent Mrs. Lamb a duty of reasonable care in manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics

enclosure, batteries and DC Motor Controllers so as to prevent injury or death to Plaintiff's decedent and others similarly situated..

171.     Defendant Club Car and Defendant Curtis each breached their duties to Plaintiff's decedent and were negligent, grossly negligent, careless, reckless, willful, wanton and malicious in one or more of the following ways:

(i)      Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the main electronics and battery compartment to safely and sufficiently resist the foreseeable intrusion of corrosive moisture and salt air in order to prevent the dangerous, unintended flow of electric current along unintended paths;

(ii)      Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the main electronics and battery compartment to safely and sufficiently to prevent dangerous, unintended arcing and sparking;

(iii)      Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the main electronics and battery compartment to prevent and/or contain the spread of excessive heat and energy;

(iv)      Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the main electronics and battery compartment to prevent insulation failure, chaffing, loose connections and high resistance;

(v)      Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the DC motor controller to safely and sufficiently resist the foreseeable intrusion of corrosive moisture and salt air in order to prevent the dangerous, unintended flow of electric current along unintended paths;

(vi)     Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the DC motor controller to safely and sufficiently to prevent dangerous, unintended arcing and sparking;

(vii)     Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the DC motor controller to prevent and/or contain the spread of excessive heat and energy;

(viii)     Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the DC motor controller to prevent insulation failure, chaffing, loose connections and high resistance;

(ix)     Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the wiring and insulation within the main electronics and battery compartment to resist the foreseeable intrusion of corrosive moisture and salt air in order to prevent the dangerous, unintended flow of electric current along unintended paths;

(x)     Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the wiring and insulation within the main electronics and battery compartment to sufficiently to prevent dangerous, unintended arcing and sparking;

(xi)     Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the wiring and insulation within the main electronics and battery compartment to prevent and/or contain the spread of excessive heat and energy;

(xii)     Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the wiring and insulation within the main electronics and battery compartment to prevent insulation failure, chaffing, loose connections and high resistance;

(xiii)    Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the Subject Golf Car in a manner to prevent the unwanted, dangerous energization of certain internal circuits during the charging process;

(xiv)    Failing to adopt and implement adequate safety hierarchy procedures and policies in design, manufacture and distribution of the Subject Golf Car;

(xv)    Failing and implement adequate safety failing to incorporate safeguards into the design, manufacture and distribution of the Subject Golf Car; and

(xvi)    on such other and further particulars as the evidence may show.

172.    As a direct and proximate result of the respective negligent, grossly negligent, willful, wanton and careless acts and/or omissions of Defendants Club Car and Curtis, as set forth above, Plaintiff and Plaintiff's decedent's beneficiaries have suffered damages, present and prospective, which are naturally the proximate consequence of the Defendant's wrongful acts, including pecuniary loss, mental shock and suffering, wounded feelings, grief and sorrow, loss of companionship, funeral expenses, and such other damages as the Court or jury deems just and proper.

173.    Plaintiff's decedent, Mrs. Lamb, has lost her life as set forth herein, and Plaintiff is informed and believes she is entitled to a judgment against Defendants Club Car and Curtis for actual and punitive damages in an amount to be determined by the Trier of fact.

### SIXTH CAUSE OF ACTION
**Strict Products Liability - Survival Action for Joel E. Lamb, Jr., S.C. Code Ann. § 15-5-90 (Against All Defendants)**

174.    Plaintiffs adopt and re-allege each prior paragraph, where relevant, as if set forth fully herein.

175.    Plaintiff Crawford and Plaintiff Brook Lamb bring this cause of action as personal representatives of the Estate of Joel E. Lamb, Jr.

176.    At all relevant times relevant, there was in full force and effect certain statutes of the State of South Carolina pertaining to Sellers of Defective Products as set forth in Section 15-73-10 et seq. of the South Carolina Code Ann. (1976, as amended).

177.    Pursuant to S.C. Code § 15-73-10 et seq., Defendants Club Car and Curtis are strictly liable in tort, irrespective of privity, for manufacturing, designing, assembling and placing a defective and unreasonably dangerous product in the stream of commerce to injure Plaintiffs.

178.    Defendant Club Car had an active role in the manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller.

179.    Defendant Curtis had an active role in the manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller.

180.    Subject Golf Car and its systems and components, were neither merchantable nor reasonably suited to the use intended when placed into commerce by Defendants.

181.    At all relevant times, including when the incident alleged herein occurred, Subject Golf Car and its systems and components, were used in an intended and/or foreseeable manner

182.    Mr. Lamb neither misused nor materially altered the Subject Golf Car and its electrical systems and components, and at the time of the incident complained of herein, the Subject Golf Car and its systems and components, were in the same or substantially similar condition that they were in at the time of sale.

183.    The Subject Golf Car and its systems and components failed to perform in a manner reasonably expected in light of their nature and intended function.

184.    Additionally, the risks inherent in the design the Subject Golf Car and its electrical

systems and components outweigh the utility of the products as designed.

185. Defendants Club Car and Curtis manufactured designed, assembled and placed the Subject Golf Car, a defective and unreasonably dangerous product, in the stream of commerce and failed to:

(i)    Properly design, manufacture and assemble the main electronics and battery compartment to safely and sufficiently resist the foreseeable intrusion of corrosive moisture and salt air in order to prevent the dangerous, unintended flow of electric current along unintended paths;

(ii)    Properly design, manufacture and assemble the main electronics and battery compartment to safely and sufficiently to prevent dangerous, unintended arcing and sparking;

(iii)    Properly design, manufacture and assemble the main electronics and battery compartment to prevent and/or contain the spread of excessive heat and energy;

(iv)    Properly design, manufacture and assemble the main electronics and battery compartment to prevent insulation failure, chaffing, loose connections and high resistance;

(v)    Properly design, manufacture and assemble the DC motor controller to safely and sufficiently resist the foreseeable intrusion of corrosive moisture and salt air in order to prevent the dangerous, unintended flow of electric current along unintended paths;

(vi)    Properly design, manufacture and assemble the DC motor controller to safely and sufficiently to prevent dangerous, unintended arcing and sparking;

(vii)    Properly design, manufacture and assemble the DC motor controller to prevent and/or contain the spread of excessive heat and energy;

(viii)    Properly design, manufacture and assemble the DC motor controller to prevent

4:16-cv-00581-RBH    Date Filed 02/25/16    Entry Number 1    Page 37 of 71

insulation failure, chaffing, loose connections and high resistance;

(ix)    Properly design, manufacture and assemble the wiring and insulation within the main electronics and battery compartment to resist the foreseeable intrusion of corrosive moisture and salt air in order to prevent the dangerous, unintended flow of electric current along unintended paths;

(x)    Properly design, manufacture and assemble the wiring and insulation within the main electronics and battery compartment to sufficiently to prevent dangerous, unintended arcing and sparking;

(xi)    Properly design, manufacture and assemble the wiring and insulation within the main electronics and battery compartment to prevent and/or contain the spread of excessive heat and energy;

(xii)    Properly design, manufacture and assemble the wiring and insulation within the main electronics and battery compartment to prevent insulation failure, chaffing, loose connections and high resistance;

(xiii)    Properly design, manufacture and assemble the Subject Golf Car in a manner to prevent the unwanted, dangerous energization of certain internal circuits during the charging process;

(xiv)    Adopt and implement adequate safety hierarchy procedures and policies in design, manufacture and distribution of the Subject Golf Car;

(xv)    Adopt and implement adequate safety failing to incorporate safeguards into the design, manufacture and distribution of the Subject Golf Car; and

(xvi)    on such other and further particulars as the evidence may show.

186.    As a direct and proximate result of the defective condition of the Subject Golf Car

and its internal systems and components, the electrical systems and componentry within the Subject Golf Car ignited on April 20, 2014.

187.    The ignition caused by defective condition of the Subject Golf Car and its internal systems and components was the direct and proximate cause of the April 20, 2014 Fire at 215-B Calhoun Drive, Garden City, South Carolina.

188.    The ignition caused by defective condition of the Subject Golf Car and its internal systems and components directly and proximately caused Mr. Lamb to:

(i)      suffer excruciating personal injuries;

(ii)     endure physical pain and suffering;

(iii)    suffer emotional distress, mental anguish, terror, knowledge of bodily injury and impending death;

(iv)     Loss of income;

(v)      funeral expenses; and

(vi)     suffer other such injuries, damages, and particulars as the evidence may show.

189.    By reason of the foregoing, Plaintiff Crawford and Plaintiff Brook Lamb, on behalf of Mr. Lamb's Estate, are entitled to recover for all general and special damages proximately caused by Defendants, and the defective condition of their products when sold.

190.    WHEREFORE, Plaintiff Crawford and Plaintiff Brook Lamb, on behalf of Mr. Lamb's Estate, demand judgment against Defendants Club Car and Curtis, jointly and severally, for all actual and compensatory damages suffered as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

## SEVENTH CAUSE OF ACTION
### Negligence/Gross Negligence - Survival Action for Joel E. Lamb, Jr.,
### S.C. Code Ann. § 15-5-90
### (Against All Defendants)

191.    Plaintiffs adopt and re-allege each prior paragraph, where relevant, as if set forth fully herein.

192.    Plaintiff Crawford and Plaintiff Brook Lamb bring this cause of action as personal representatives of the Estate of Joel E. Lamb, Jr.

193.    Defendant Club Car had an active role in the manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller.

194.    Defendant Curtis had an active role in the manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller.

195.    Defendant Club Car owed Mr. Lamb a duty of reasonable care in manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller.

196.    Defendant Curtis owed Mr. Lamb a duty of reasonable care in manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller.

197.    Subject Golf Car and its systems and components, were neither merchantable nor reasonably suited to the use intended when placed into commerce by Defendants.

198.    At all relevant times, including when the incident alleged herein occurred, Subject

Golf Car and its systems and components, were used in an intended and/or foreseeable manner.

199.     Mr. Lamb neither misused nor materially altered the Subject Golf Car and its electrical systems and components, and at the time of the incident complained of herein, the Subject Golf Car and its systems and components, were in the same or substantially similar condition that they were in at the time of sale.

200.     The Subject Golf Car and its systems and components failed to perform in a manner reasonably expected in light of their nature and intended function.

201.     Additionally, the risks inherent in the design the Subject Golf Car and its electrical systems and components outweigh the utility of the products as designed.

202.     Defendants Club Car and Curtis were negligent, grossly negligent, willful, wanton, reckless and careless in manufacturing, designing, assembling and placing the Subject Golf Car, a defective and unreasonably dangerous product, in the stream of commerce and breach their respective duties to Mr. Lamb by:

(i)     Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the main electronics and battery compartment to safely and sufficiently resist the foreseeable intrusion of corrosive moisture and salt air in order to prevent the dangerous, unintended flow of electric current along unintended paths;

(ii)     Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the main electronics and battery compartment to safely and sufficiently to prevent dangerous, unintended arcing and sparking;

(iii)     Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the main electronics and battery compartment to prevent and/or contain the spread of excessive heat and energy;

(iv)     Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the main electronics and battery compartment to prevent insulation failure, chaffing, loose connections and high resistance;

(v)     Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the DC motor controller to safely and sufficiently resist the foreseeable intrusion of corrosive moisture and salt air in order to prevent the dangerous, unintended flow of electric current along unintended paths;

(vi)     Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the DC motor controller to safely and sufficiently to prevent dangerous, unintended arcing and sparking;

(vii)     Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the DC motor controller to prevent and/or contain the spread of excessive heat and energy;

(viii)     Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the DC motor controller to prevent insulation failure, chaffing, loose connections and high resistance;

(ix)     Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the wiring and insulation within the main electronics and battery compartment to resist the foreseeable intrusion of corrosive moisture and salt air in order to prevent the dangerous, unintended flow of electric current along unintended paths;

(x)     Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the wiring and insulation within the main electronics and battery compartment to sufficiently to prevent dangerous, unintended arcing and sparking;

(xi)     Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the wiring and insulation within the main electronics and battery compartment to prevent and/or contain the spread of excessive heat and energy;

(xii)     Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the wiring and insulation within the main electronics and battery compartment to prevent insulation failure, chaffing, loose connections and high resistance;

(xiii)     Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the Subject Golf Car in a manner to prevent the unwanted, dangerous energization of certain internal circuits during the charging process;

(xiv)     Failing to adopt and implement adequate safety hierarchy procedures and policies in design, manufacture and distribution of the Subject Golf Car;

(xv)     Failing and implement adequate safety failing to incorporate safeguards into the design, manufacture and distribution of the Subject Golf Car; and

(xvi)     on such other and further particulars as the evidence may show.

203.     As a direct and proximate result of the defective condition of the Subject Golf Car and its internal systems and components, the electrical systems and componentry within the Subject Golf Car ignited on April 20, 2014.

204.     The ignition caused by defective condition of the Subject Golf Car and its internal systems and components was the direct and proximate cause of the April 20, 2014 Fire at 215-B Calhoun Drive, Garden City, South Carolina.

205.     The ignition caused by defective condition of the Subject Golf Car and its internal systems and components directly and proximately caused Mr. Lamb to:

(i)     suffer excruciating personal injuries;

42

(ii)    endure physical pain and suffering;

(iii)    suffer emotional distress, mental anguish, terror, knowledge of bodily injury and impending death;

(iv)    loss of income;

(v)    funeral expenses; and

(vi)    suffer other such injuries, damages, and particulars as the evidence may show.

206.    By reason of the foregoing, Plaintiff Crawford and Plaintiff Brooke Lamb, on behalf of Mr. Lamb's Estate, are entitled to recover for all general and special damages proximately caused by Defendants, and the defective condition of their products when sold.

207.    WHEREFORE, Plaintiff Crawford and Plaintiff Brooke Lamb, on behalf of Mr. Lamb's Estate, demand judgment against Defendants Club Car and Curtis, jointly and severally, for all actual and compensatory damages suffered as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

## EIGHT CAUSE OF ACTION
### Failure To Warn - Survival Action for Joel E. Lamb, Jr., S.C. Code Ann. § 15-5-90
### (Against All Defendants)

208.    Plaintiffs adopt and re-allege each prior paragraph, where relevant, as if set forth fully herein.

209.    Plaintiff Crawford and Plaintiff Brook Lamb bring this cause of action as personal representatives of the Estate of Joel E. Lamb, Jr.

210.    Defendant Club Car, which had an active role in the manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor

Controller, owed a duty to give adequate warnings of the dangers of which it knew or reasonably should have known could arise from the use of its respective products and components.

211.     Defendant Club Car had actual or constructive knowledge that the intended use of the Subject Golf Car created a danger for the ultimate consumer during the foreseeable and anticipated use of the product it sold.

212.     Defendant Club Car therefore had a duty to warn of the foreseeable dangers arising from the use of the Subject Vehicle to inform third persons of the facts which make the Subject Vehicle dangerous to users and consumers.

213.     Specifically,

(i)     Defendant Club Car knew or reasonably should have known that the design, manufacture and assembly of the main electronics and battery compartment did not prevent dangerous, unintended arcing and sparking.

(ii)     Defendant Club Car knew or reasonably should have known that the design, manufacture and assembly of the main electronics and battery compartment did not prevent or contain the spread of excessive heat and energy.

(iii)     Defendant Club Car knew or reasonably should have known that the design, manufacture and assembly of the main electronics and battery compartment did not prevent insulation failure, chaffing, loose connections and high resistance.

(iv)     Defendant Club Car knew or reasonably should have known that the design, manufacture and assembly of the DC motor controller to safely and sufficiently resist the foreseeable intrusion of corrosive moisture and salt air in order to prevent the dangerous, unintended flow of electric current along unintended paths.

214.     Defendant Club Car breached these respective duties by failing to provide adequate

warnings of the potential risks of Subject Golf Car and by failing to adequately communicate those warnings to the ultimate consumer.

215.     Defendant Curtis, which had an active role in the manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller, owed a duty to give adequate warnings of the dangers of which it knew or reasonably should have known could arise from the use of its respective products and components.

216.     Defendant Curtis had actual or constructive knowledge that the intended use of the Subject Golf Car created a danger for the ultimate consumer during the foreseeable and anticipated use of the product it sold.

217.     Defendant Curtis therefore had a duty to warn of the foreseeable dangers arising from the use of the Subject Vehicle to inform third persons of the facts which make the Subject Vehicle dangerous to users and consumers.

218.     Specifically,

(i)     Defendant Curtis knew or reasonably should have known that the design, manufacture and assembly of the main electronics and battery compartment did not prevent dangerous, unintended arcing and sparking.

(ii)     Defendant Curtis knew or reasonably should have known that the design, manufacture and assembly of the main electronics and battery compartment did not prevent or contain the spread of excessive heat and energy.

(iii)     Defendant Curtis knew or reasonably should have known that the design, manufacture and assembly of the main electronics and battery compartment did not prevent insulation failure, chaffing, loose connections and high resistance.

(iv)    Defendant Curtis knew or reasonably should have known that the design, manufacture and assembly of the DC motor controller to safely and sufficiently resist the foreseeable intrusion of corrosive moisture and salt air in order to prevent the dangerous, unintended flow of electric current along unintended paths.

219.    Defendant Curtis breached these respective duties by failing to provide adequate warnings of the potential risks of Subject Golf Car and by failing to adequately communicate those warnings to the ultimate consumer.

220.    The Defendants' failure to warn of the dangers associated with the Subject Golf Car directly and proximately caused Mr. Lamb to:

(i)     suffer excruciating personal injuries;

(ii)    endure physical pain and suffering;

(iii)   suffer emotional distress, mental anguish, terror, knowledge of bodily injury and impending death;

(iv)    loss of income;

(v)     funeral expenses; and

(vi)    suffer other such injuries, damages, and particulars as the evidence may show.

221.    By reason of the foregoing, Plaintiff Crawford and Plaintiff Brooke Lamb, on behalf of Mr. Lamb's Estate, are entitled to recover for all general and special damages proximately caused by Defendants, and the defective condition of their products when sold.

222.    WHEREFORE, Plaintiff Crawford and Plaintiff Brooke Lamb, on behalf of Mr. Lamb's Estate, demand judgment against Defendants Club Car and Curtis, jointly and severally, for all actual and compensatory damages suffered as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable,

and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

## NINTH CAUSE OF ACTION
### Punitive Damages - Survival Action for Joel E. Lamb, Jr., S.C. Code Ann. § 15-5-90
### (Against All Defendants)

223.    Plaintiffs adopt and re-allege each prior paragraph, where relevant, as if set forth fully herein.

224.    Plaintiff Crawford and Plaintiff Brook Lamb bring this cause of action as personal representatives of the Estate of Joel E. Lamb, Jr.

225.    The actions and inactions of the Defendants were of such a character as to constitute a pattern or practice of willful, wanton and reckless misconduct causing substantial harm and resulting in damages to Mr. Lamb.

226.    More specifically, the Defendants' acted with a conscious and flagrant disregard for the rights and safety of Mr. Lamb, and/or deliberately engaged in willful, wanton and reckless disregard for the life and safety of Mr. Lamb.

227.    By reason of the foregoing, the Defendants are liable for punitive and exemplary damages.

228.    WHEREFORE, Plaintiff Crawford and Plaintiff Brooke Lamb, on behalf of Mr. Lamb's Estate, demand judgment against Defendants Club Car and Curtis, jointly and severally, for punitive and exemplary damages, plus interest, costs and attorneys' fees for having to bring this action, and such other and further relief as this Honorable Court or jury may deem just and proper.

## TENTH CAUSE OF ACTION
### Wrongful Death of Joel M. Lamb, Jr., S.C. Code Ann. § 15-51-10
### (Against All Defendants)

229.    Plaintiffs incorporate by reference all allegations contained in the Paragraphs above, as if set forth verbatim herein.

230.    Plaintiff Crawford and Plaintiff Brook Lamb bring this cause of action as personal representatives of the Estate of Joel E. Lamb, Jr.

231.    Defendant Club Car had an active role in the manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller.

232.    Defendant Curtis had an active role in the manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller.

233.    Defendant Club Car owed Plaintiffs' decedent Mr. Lamb a duty of reasonable care in manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controllers so as to prevent injury or death to Plaintiff's decedent and others similarly situated.

234.    Defendant Curtis owed Plaintiffs' decedent Mr. Lamb a duty of reasonable care in manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controllers so as to prevent injury or death to Plaintiff's decedent and others similarly situated..

235.    Defendant Club Car and Defendant Curtis each breached their duties to Plaintiffs' decedent and were negligent, grossly negligent, careless, reckless, willful, wanton and malicious in one or more of the following ways:

(i)    Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the main electronics and battery compartment to safely and sufficiently resist

the foreseeable intrusion of corrosive moisture and salt air in order to prevent the dangerous, unintended flow of electric current along unintended paths;

(ii)     Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the main electronics and battery compartment to safely and sufficiently to prevent dangerous, unintended arcing and sparking;

(iii)    Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the main electronics and battery compartment to prevent and/or contain the spread of excessive heat and energy;

(iv)    Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the main electronics and battery compartment to prevent insulation failure, chaffing, loose connections and high resistance;

(v)     Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the DC motor controller to safely and sufficiently resist the foreseeable intrusion of corrosive moisture and salt air in order to prevent the dangerous, unintended flow of electric current along unintended paths;

(vi)    Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the DC motor controller to safely and sufficiently to prevent dangerous, unintended arcing and sparking;

(vii)   Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the DC motor controller to prevent and/or contain the spread of excessive heat and energy;

(viii)  Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the DC motor controller to prevent insulation failure, chaffing, loose

49

connections and high resistance;

(ix)    Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the wiring and insulation within the main electronics and battery compartment to resist the foreseeable intrusion of corrosive moisture and salt air in order to prevent the dangerous, unintended flow of electric current along unintended paths;

(x)    Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the wiring and insulation within the main electronics and battery compartment to sufficiently to prevent dangerous, unintended arcing and sparking;

(xi)    Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the wiring and insulation within the main electronics and battery compartment to prevent and/or contain the spread of excessive heat and energy;

(xii)    Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the wiring and insulation within the main electronics and battery compartment to prevent insulation failure, chaffing, loose connections and high resistance;

(xiii)    Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the Subject Golf Car in a manner to prevent the unwanted, dangerous energization of certain internal circuits during the charging process;

(xiv)    Failing to adopt and implement adequate safety hierarchy procedures and policies in design, manufacture and distribution of the Subject Golf Car;

(xv)    Failing and implement adequate safety failing to incorporate safeguards into the design, manufacture and distribution of the Subject Golf Car; and

(xvi)    on such other and further particulars as the evidence may show.

236.    As a direct and proximate result of the respective negligent, grossly negligent,

willful, wanton and careless acts and/or omissions of Defendants Club Car and Curtis, as set forth above, Plaintiff Crawford and Brooke Lamb and Plaintiffs' decedent's beneficiaries have suffered damages, present and prospective, which are naturally the proximate consequence of the Defendant's wrongful acts, including pecuniary loss, mental shock and suffering, wounded feelings, grief and sorrow, loss of companionship, funeral expenses, and such other damages as the Court or jury deems just and proper.

237.    Plaintiff's decedent, Mr. Lamb, has lost his life as set forth herein, and Plaintiff Crawford and Brooke Lamb are informed and believe they is entitled to a judgment against Defendants Club Car and Curtis for actual and punitive damages in an amount to be determined by the Trier of fact.

### ELEVENTH CAUSE OF ACTION
**Strict Liability Products Liability on behalf and for the benefit of minors JL, KT, AM and AW**
**(Against All Defendants)**

238.    Plaintiffs adopt and re-allege each prior paragraph, where relevant, as if set forth fully herein.

239.    At all relevant times relevant, there was in full force and effect certain statutes of the State of South Carolina pertaining to Sellers of Defective Products as set forth in Section 15-73-10 et seq. of the South Carolina Code Ann. (1976, as amended).

240.    Pursuant to S.C. Code § 15-73-10 et seq., Defendants Club Car and Curtis are strictly liable in tort, irrespective of privity, for manufacturing, designing, assembling and placing a defective and unreasonably dangerous product in the stream of commerce to injure Plaintiffs.

241.    Defendant Club Car had an active role in the manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller.

242.    Defendant Curtis had an active role in the manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller.

243.    Subject Golf Car and its systems and components, were neither merchantable nor reasonably suited to the use intended when placed into commerce by Defendants.

244.    At all relevant times, including when the incident alleged herein occurred, Subject Golf Car and its systems and components, were used in an intended and/or foreseeable manner.

245.    The Minor Plaintiffs neither misused nor materially altered the Subject Golf Car and its electrical systems and components, and at the time of the incident complained of herein, the Subject Golf Car and its systems and components, were in the same or substantially similar condition that they were in at the time of sale.

246.    The Subject Golf Car and its systems and components failed to perform in a manner reasonably expected in light of their nature and intended function.

247.    Additionally, the risks inherent in the design the Subject Golf Car and its electrical systems and components outweigh the utility of the products as designed.

248.    Defendants Club Car and Curtis manufactured designed, assembled and placed the Subject Golf Car, a defective and unreasonably dangerous product, in the stream of commerce and failed to:

(i)     Properly design, manufacture and assemble the main electronics and battery compartment to safely and sufficiently resist the foreseeable intrusion of corrosive moisture and salt air in order to prevent the dangerous, unintended flow of electric current along unintended paths;

(ii)    Properly design, manufacture and assemble the main electronics and battery

52

compartment to safely and sufficiently to prevent dangerous, unintended arcing and sparking;

(iii)    Properly design, manufacture and assemble the main electronics and battery compartment to prevent and/or contain the spread of excessive heat and energy;

(iv)    Properly design, manufacture and assemble the main electronics and battery compartment to prevent insulation failure, chaffing, loose connections and high resistance;

(v)    Properly design, manufacture and assemble the DC motor controller to safely and sufficiently resist the foreseeable intrusion of corrosive moisture and salt air in order to prevent the dangerous, unintended flow of electric current along unintended paths;

(vi)    Properly design, manufacture and assemble the DC motor controller to safely and sufficiently to prevent dangerous, unintended arcing and sparking;

(vii)    Properly design, manufacture and assemble the DC motor controller to prevent and/or contain the spread of excessive heat and energy;

(viii)    Properly design, manufacture and assemble the DC motor controller to prevent insulation failure, chaffing, loose connections and high resistance;

(ix)    Properly design, manufacture and assemble the wiring and insulation within the main electronics and battery compartment to resist the foreseeable intrusion of corrosive moisture and salt air in order to prevent the dangerous, unintended flow of electric current along unintended paths;

(x)    Properly design, manufacture and assemble the wiring and insulation within the main electronics and battery compartment to sufficiently to prevent dangerous, unintended arcing and sparking;

(xi)    Properly design, manufacture and assemble the wiring and insulation within the

main electronics and battery compartment to prevent and/or contain the spread of excessive heat and energy;

(xii)   Properly design, manufacture and assemble the wiring and insulation within the main electronics and battery compartment to prevent insulation failure, chaffing, loose connections and high resistance;

(xiii)   Properly design, manufacture and assemble the Subject Golf Car in a manner to prevent the unwanted, dangerous energization of certain internal circuits during the charging process;

(xiv)   Adopt and implement adequate safety hierarchy procedures and policies in design, manufacture and distribution of the Subject Golf Car;

(xv)   Adopt and implement adequate safeguards into the design, manufacture and distribution of the Subject Golf Car; and

(xvi)   on such other and further particulars as the evidence may show.

249.   As a direct and proximate result of the defective condition of the Subject Golf Car and its internal systems and components, the electrical systems and componentry within the Subject Golf Car ignited on April 20, 2014.

250.   The ignition caused by defective condition of the Subject Golf Car and its internal systems and components was the direct and proximate cause of the April 20, 2014 fire at 215-B Calhoun Drive, Garden City, South Carolina.

251.   The ignition caused by defective condition of the Subject Golf Car and its internal systems and components directly and proximately caused Minor Plaintiff JL to:

(i)      suffer serious personal injuries;

(ii)     endure physical pain and suffering;

(iii)     suffer mental and emotional distress;

(iv)     incur unnecessary medical expenses – past, present and future; and

(v)     suffer other such injuries, damages, and particulars as the evidence may show.

252.     The ignition caused by defective condition of the Subject Golf Car and its internal systems and components directly and proximately caused Minor Plaintiff KT to:

(i)     suffer serious personal injuries, including second burns;

(ii)     endure physical pain and suffering;

(iii)     suffer mental and emotional distress;

(iv)     incur unnecessary medical expenses – past, present and future; and

(v)     suffer other such injuries, damages, and particulars as the evidence may show.

253.     The ignition caused by defective condition of the Subject Golf Car and its internal systems and components directly and proximately caused Minor Plaintiff AM to:

(i)     suffer serious personal injuries;

(ii)     endure physical pain and suffering;

(iii)     suffer mental and emotional distress;

(iv)     incur unnecessary medical expenses – past, present and future; and

(v)     suffer other such injuries, damages, and particulars as the evidence may show.

254.     The ignition caused by defective condition of the Subject Golf Car and its internal systems and components Minor Plaintiff AW to:

(i)     suffer serious personal injuries;

(ii)     endure physical pain and suffering;

(iii)     suffer mental and emotional distress;

(iv)     incur unnecessary medical expenses – past, present and future; and

(v)      suffer other such injuries, damages, and particulars as the evidence may show.

255.     By reason of the foregoing, Plaintiff Linda Moore, on behalf of Minor Plaintiff JL, Plaintiff Tilton, on behalf of Minor Plaintiff KT, Plaintiffs Ken Moore and Bree Moore, on behalf of Minor Plaintiff AM, and Plaintiffs Steven Walker and Crystal Walker, on behalf of Minor Plaintiff AW, are each entitled to recover for all general and special damages proximately caused by Defendants, and the defective condition of their products when sold.

256.     WHEREFORE, Plaintiff Linda Moore, on behalf of Minor Plaintiff JL, Plaintiff Tilton, on behalf of Minor Plaintiff KT, Plaintiffs Ken Moore and Bree Moore, on behalf of Minor Plaintiff AM, and Plaintiffs Steven Walker and Crystal Walker, on behalf of Minor Plaintiff AW, each respectively demand judgment against Defendants Club Car and Curtis, jointly and severally, for all actual and compensatory damages suffered as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

### TWELFTH CAUSE OF ACTION
**Negligence and Gross Negligence on behalf and for the benefit of minors JL**
**KT, AM and AW**
**(Against All Defendants)**

257.     Plaintiffs adopt and re-allege each prior paragraph, where relevant, as if set forth fully herein.

258.     Defendant Club Car had an active role in the manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller.

259.     Defendant Curtis had an active role in the manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring,

insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller.

260.    Defendant Club Car owed Minor Plaintiff JL a duty of reasonable care in manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller.

261.    Defendant Curtis owed Minor Plaintiff JL a duty of reasonable care in manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller.

262.    Defendant Club Car owed Minor Plaintiff KT a duty of reasonable care in manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller.

263.    Defendant Curtis owed Minor Plaintiff KT a duty of reasonable care in manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller.

264.    Defendant Club Car owed Minor Plaintiff AW a duty of reasonable care in manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller.

265.    Defendant Curtis owed Minor Plaintiff AW a duty of reasonable care in manufacture, design, and/or assembly of the Subject Golf Car and its systems and components,

including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller.

266.    Defendant Club Car owed Minor Plaintiff AM a duty of reasonable care in manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller.

267.    Defendant Curtis owed Minor Plaintiff AM a duty of reasonable care in manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller.

268.    Subject Golf Car and its systems and components, were neither merchantable nor reasonably suited to the use intended when placed into commerce by Defendants.

269.    At all relevant times, including when the incident alleged herein occurred, Subject Golf Car and its systems and components, were used in an intended and/or foreseeable manner.

270.    The Minor Plaintiffs neither misused nor materially altered the Subject Golf Car and its electrical systems and components, and at the time of the incident complained of herein, the Subject Golf Car and its systems and components, were in the same or substantially similar condition that they were in at the time of sale.

271.    The Subject Golf Car and its systems and components failed to perform in a manner reasonably expected in light of their nature and intended function.

272.    Additionally, the risks inherent in the design the Subject Golf Car and its electrical systems and components outweigh the utility of the products as designed.

273.    Defendants Club Car and Curtis were negligent, grossly negligent, willful, wanton,

reckless and careless in manufacturing, designing, assembling and placing the Subject Golf Car, a defective and unreasonably dangerous product, in the stream of commerce and breached their respective duties to Minor Plaintiffs JL, KT,  AM and AW by:

(i)     Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the main electronics and battery compartment to safely and sufficiently resist the foreseeable intrusion of corrosive moisture and salt air in order to prevent the dangerous, unintended flow of electric current along unintended paths;

(ii)     Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the main electronics and battery compartment to safely and sufficiently to prevent dangerous, unintended arcing and sparking;

(iii)     Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the main electronics and battery compartment to prevent and/or contain the spread of excessive heat and energy;

(iv)     Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the main electronics and battery compartment to prevent insulation failure, chaffing, loose connections and high resistance;

(v)     Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the DC motor controller to safely and sufficiently resist the foreseeable intrusion of corrosive moisture and salt air in order to prevent the dangerous, unintended flow of electric current along unintended paths;

(vi)     Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the DC motor controller to safely and sufficiently to prevent dangerous, unintended arcing and sparking;

(vii)    Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the DC motor controller to prevent and/or contain the spread of excessive heat and energy;

(viii)    Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the DC motor controller to prevent insulation failure, chaffing, loose connections and high resistance;

(ix)    Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the wiring and insulation within the main electronics and battery compartment to resist the foreseeable intrusion of corrosive moisture and salt air in order to prevent the dangerous, unintended flow of electric current along unintended paths;

(x)    Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the wiring and insulation within the main electronics and battery compartment to sufficiently to prevent dangerous, unintended arcing and sparking;

(xi)    Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the wiring and insulation within the main electronics and battery compartment to prevent and/or contain the spread of excessive heat and energy;

(xii)    Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the wiring and insulation within the main electronics and battery compartment to prevent insulation failure, chaffing, loose connections and high resistance;

(xiii)    Failing to exercise reasonable care and precautions in the design, manufacture and assembly of the Subject Golf Car in a manner to prevent the unwanted, dangerous energization of certain internal circuits during the charging process;

(xiv)    Failing to adopt and implement adequate safety hierarchy procedures and policies

in design, manufacture and distribution of the Subject Golf Car;

(xv)    Failing and implement adequate safety failing to incorporate safeguards into the design, manufacture and distribution of the Subject Golf Car; and

(xvi)    on such other and further particulars as the evidence may show.

274.    As a direct and proximate result of the defective condition of the Subject Golf Car and its internal systems and components, the electrical systems and componentry within the Subject Golf Car ignited on April 20, 2014.

275.    The ignition caused by defective condition of the Subject Golf Car and its internal systems and components was the direct and proximate cause of the April 20, 2014 Fire at 215-B Calhoun Drive, Garden City, South Carolina.

276.    The ignition caused by defective condition of the Subject Golf Car and its internal systems and components directly and proximately caused Minor Plaintiff JL to:

(i)    suffer serious personal injuries;

(ii)    endure physical pain and suffering;

(iii)    suffer mental and emotional distress;

(iv)    incur unnecessary medical expenses – past, present and future; and

(v)    suffer other such injuries, damages, and particulars as the evidence may show.

277.    The ignition caused by defective condition of the Subject Golf Car and its internal systems and components directly and proximately caused Minor Plaintiff KT to:

(i)    suffer serious personal injuries, including second burns;

(ii)    endure physical pain and suffering;

(iii)    suffer mental and emotional distress;

(iv)    incur unnecessary medical expenses – past, present and future; and

(v)     suffer other such injuries, damages, and particulars as the evidence may show.

278.    The ignition caused by defective condition of the Subject Golf Car and its internal systems and components directly and proximately caused Minor Plaintiff AM to:

(i)     suffer serious personal injuries;

(ii)    endure physical pain and suffering;

(iii)   suffer mental and emotional distress;

(iv)    incur unnecessary medical expenses – past, present and future; and

(v)     suffer other such injuries, damages, and particulars as the evidence may show.

279.    The ignition caused by defective condition of the Subject Golf Car and its internal systems and components Minor Plaintiff AW to:

(i)     suffer serious personal injuries;

(ii)    endure physical pain and suffering;

(iii)   suffer mental and emotional distress;

(iv)    incur unnecessary medical expenses – past, present and future; and

(v)     suffer other such injuries, damages, and particulars as the evidence may show.

280.    By reason of the foregoing, Plaintiff Linda Moore, on behalf of Minor Plaintiff JL, Plaintiff Tilton, on behalf of Minor Plaintiff KT, Plaintiffs Ken Moore and Bree Moore, on behalf of Minor Plaintiff AM, and Plaintiffs Steven Walker and Crystal Walker, on behalf of Minor Plaintiff AW, are each entitled to recover for all general and special damages proximately caused by Defendants, and the defective condition of their products when sold.

281.    WHEREFORE, Plaintiff Linda Moore, on behalf of Minor Plaintiff JL, Plaintiff Tilton, on behalf of Minor Plaintiff KT, Plaintiffs Ken Moore and Bree Moore, on behalf of Minor Plaintiff AM, and Plaintiffs Steven Walker and Crystal Walker, on behalf of Minor Plaintiff AW,

each respectively demand judgment against Defendants Club Car and Curtis, jointly and severally, for all actual and compensatory damages suffered as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

**THIRTEENTH CAUSE OF ACTION**
**Failure to Warn on behalf and for the benefit of minors JL**
**KT, AM and AW**
**(Against All Defendants)**

282.     Plaintiffs adopt and re-allege each prior paragraph, where relevant, as if set forth fully herein.

283.     Defendant Club Car, which had an active role in the manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller, owed a duty to give adequate warnings of the dangers of which it knew or reasonably should have known could arise from the use of its respective products and components.

284.     Defendant Club Car had actual or constructive knowledge that the intended use of the Subject Golf Car created a danger for the ultimate consumer during the foreseeable and anticipated use of the product it sold.

285.     Defendant Club Car therefore had a duty to warn of the foreseeable dangers arising from the use of the Subject Vehicle to inform third persons of the facts which make the Subject Vehicle dangerous to users and consumers.

286.     Specifically,

(i)     Defendant Club Car knew or reasonably should have known that the design, manufacture and assembly of the main electronics and battery compartment did not prevent

dangerous, unintended arcing and sparking.

(ii)    Defendant Club Car knew or reasonably should have known that the design, manufacture and assembly of the main electronics and battery compartment did not prevent or contain the spread of excessive heat and energy.

(iii)    Defendant Club Car knew or reasonably should have known that the design, manufacture and assembly of the main electronics and battery compartment did not prevent insulation failure, chaffing, loose connections and high resistance.

(iv)    Defendant Club Car knew or reasonably should have known that the design, manufacture and assembly of the DC motor controller to safely and sufficiently resist the foreseeable intrusion of corrosive moisture and salt air in order to prevent the dangerous, unintended flow of electric current along unintended paths.

287.    Defendant Club Car breached these respective duties by failing to provide adequate warnings of the potential risks of Subject Golf Car and by failing to adequately communicate those warnings to the ultimate consumer.

288.    Defendant Curtis, which had an active role in the manufacture, design, and/or assembly of the Subject Golf Car and its systems and components, including but not limited to the wiring, insulation, main electronics panel, main electronics enclosure, batteries and DC Motor Controller, owed a duty to give adequate warnings of the dangers of which it knew or reasonably should have known could arise from the use of its respective products and components.

289.    Defendant Curtis had actual or constructive knowledge that the intended use of the Subject Golf Car created a danger for the ultimate consumer during the foreseeable and anticipated use of the product it sold.

290.    Defendant Curtis therefore had a duty to warn of the foreseeable dangers arising

from the use of the Subject Vehicle to inform third persons of the facts which make the Subject

Vehicle dangerous to users and consumers.

291.    Specifically,

(i)    Defendant Curtis knew or reasonably should have known that the design,

manufacture and assembly of the main electronics and battery compartment did not prevent

dangerous, unintended arcing and sparking.

(ii)    Defendant Curtis knew or reasonably should have known that the design,

manufacture and assembly of the main electronics and battery compartment did not prevent

or contain the spread of excessive heat and energy.

(iii)    Defendant Curtis knew or reasonably should have known that the design,

manufacture and assembly of the main electronics and battery compartment did not prevent

insulation failure, chaffing, loose connections and high resistance.

(iv)    Defendant Curtis knew or reasonably should have known that the design,

manufacture and assembly of the DC motor controller to safely and sufficiently resist the

foreseeable intrusion of corrosive moisture and salt air in order to prevent the dangerous,

unintended flow of electric current along unintended paths.

(v)    Defendant Curtis breached these respective duties by failing to provide adequate

warnings of the potential risks of Subject Golf Car and by failing to adequately

communicate those warnings to the ultimate consumer.

292.    The Defendants' failure to warn of the dangers associated with the Subject Golf

Car directly and proximately caused Minor Plaintiff JLto:

(i)    suffer serious personal injuries;

(ii)    endure physical pain and suffering;

(iii)  suffer mental and emotional distress;

(iv)  incur unnecessary medical expenses – past, present and future; and

(v)  suffer other such injuries, damages, and particulars as the evidence may show.

293.  The Defendants' failure to warn of the dangers associated with the Subject Golf Car directly and proximately caused Minor Plaintiff KT to: suffer serious personal injuries, including second burns;

(i)  endure physical pain and suffering;

(ii)  suffer mental and emotional distress;

(iii)  incur unnecessary medical expenses – past, present and future; and

(iv)  suffer other such injuries, damages, and particulars as the evidence may show.

294.  The Defendants' failure to warn of the dangers associated with the Subject Golf Car directly and proximately caused Minor Plaintiff AM to:

(i)  suffer serious personal injuries;

(ii)  endure physical pain and suffering;

(iii)  suffer mental and emotional distress;

(iv)  incur unnecessary medical expenses – past, present and future; and

(v)  suffer other such injuries, damages, and particulars as the evidence may show.

295.  The Defendants' failure to warn of the dangers associated with the Subject Golf Car directly and proximately caused Minor Plaintiff AW to:

(i)  suffer serious personal injuries;

(ii)  endure physical pain and suffering;

(iii)  suffer mental and emotional distress;

(iv)  incur unnecessary medical expenses – past, present and future; and

(v)      suffer other such injuries, damages, and particulars as the evidence may show.

296.    By reason of the foregoing, Plaintiff Linda Moore, on behalf of Minor Plaintiff JL, Plaintiff Tilton, on behalf of Minor Plaintiff KT, Plaintiffs Ken Moore and Bree Moore, on behalf of Minor Plaintiff AM, and Plaintiffs Steven Walker and Crystal Walker, on behalf of Minor Plaintiff AW, are each entitled to recover for all general and special damages proximately caused by Defendants, and the defective condition of their products when sold.

297.    WHEREFORE, Plaintiff Linda Moore, on behalf of Minor Plaintiff JL, Plaintiff Tilton, on behalf of Minor Plaintiff KT, Plaintiffs Ken Moore and Bree Moore, on behalf of Minor Plaintiff AM, and Plaintiffs Steven Walker and Crystal Walker, on behalf of Minor Plaintiff AW, each respectively demand judgment against Defendants Club Car and Curtis, jointly and severally, for all actual and compensatory damages suffered as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

## FOURTEENTH CAUSE OF ACTION
### Negligent Infliction of Emotional Distress on behalf and for the benefit of minors JL, KT, AM and AW
### (Against All Defendants)

298.    Plaintiffs adopt and re-allege each prior paragraph, where relevant, as if set forth fully herein.

299.    The negligent acts and/or omissions of the Defendants complained of herein caused serious personal injuries to Minor Plaintiffs JL, KT, AM and AW.

300.    As a direct and proximate result of the personal injuries sustained by Minor Plaintiffs JL, KT, AM and AW, Minor Plaintiffs JL, KT, AM and AW have also each suffered severe mental and emotional distress.

301.     Moreover, the negligent acts and/or omissions of the Defendants complained of herein caused serious personal injuries to, and the deaths of, Mr. Lamb and Mrs. Lamb, who were closely related to Minor Plaintiffs JL, KT and AM.

302.     Minor Plaintiffs JL, KT and AM were in close proximity to Mr. and Mrs. Lamb at the time of the Fire.

303.     Minor Plaintiffs JL, KT and AM contemporaneously perceived the injuries sustained by Mr. and Mrs. Moore during the Fire.

304.     As a direct and proximate result of all Defendants' negligent acts and/or omissions causing injuries to Mr. and Mrs. Lamb, Minor Plaintiffs JL, KT and AM and have each suffered severe mental and emotional distress.

305.     By reason of the foregoing, Plaintiff Linda Moore, on behalf of Minor Plaintiff JL, Plaintiff Tilton, on behalf of Minor Plaintiff KT, Plaintiffs Ken Moore and Bree Moore, on behalf of Minor Plaintiff AM, and Plaintiffs Steven Walker and Crystal Walker, on behalf of Minor Plaintiff AW, are each entitled to recover for all general and special damages proximately caused by Defendants, and the defective condition of their products when sold.

306.     WHEREFORE, Plaintiff Linda Moore, on behalf of Minor Plaintiff JL, Plaintiff Tilton, on behalf of Minor Plaintiff KT, Plaintiffs Ken Moore and Bree Moore, on behalf of Minor Plaintiff AM, and Plaintiffs Steven Walker and Crystal Walker, on behalf of Minor Plaintiff AW, each respectively demand judgment against Defendants Club Car and Curtis, jointly and severally, for all actual and compensatory damages suffered as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable, and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

**FIFTEENTH CAUSE OF ACTION**
**Punitive Damages on behalf and for the benefit of minors JL**
**KT, AM and AW**
**(Against All Defendants)**

307.     Plaintiffs adopt and re-allege each prior paragraph, where relevant, as if set forth fully herein.

308.     The actions and inactions of the Defendants were of such a character as to constitute a pattern or practice of willful, wanton and reckless misconduct causing substantial harm and resulting in damages to Minor Plaintiffs JL, KT, AM and AW.

309.     More specifically, the Defendants' acted with a conscious and flagrant disregard for the rights and safety of Mrs. Lamb, and/or deliberately engaged in willful, wanton and reckless disregard for the life and safety of Minor Plaintiffs JL, KT, AM and AW.

310.     By reason of the foregoing, the Defendants are liable for punitive and exemplary damages.

311.     By reason of the foregoing, Plaintiff Linda Moore, on behalf of Minor Plaintiff JL, Plaintiff Tilton, on behalf of Minor Plaintiff KT, Plaintiffs Ken Moore and Bree Moore, on behalf of Minor Plaintiff AM, and Plaintiffs Steven Walker and Crystal Walker, on behalf of Minor Plaintiff AW, are each entitled to recover for all general and special damages proximately caused by Defendants, and the defective condition of their products when sold.

312.     WHEREFORE, Plaintiff Linda Moore, on behalf of Minor Plaintiff JL Plaintiff Tilton, on behalf of Minor Plaintiff KT, Plaintiffs Ken Moore and Bree Moore, on behalf of Minor Plaintiff AM, and Plaintiffs Steven Walker and Crystal Walker, on behalf of Minor Plaintiff AW, each respectively demand judgment against Defendants Club Car and Curtis, jointly and severally, for all actual and compensatory damages suffered as well as for punitive damages in an amount sufficient to keep such wrongful conduct from being repeated, together with interest, if applicable,

and all costs of this action and for such other and further relief as this Honorable Court and/or jury may deem just and proper.

## PRAYER FOR RELIEF

313.    WHEREFORE, Plaintiffs pray as follows:

(i)      For a trial by jury and judgment against all Defendants;

(ii)     For such sums as actual and other compensatory damages, including pain and suffering and permanent impairment, in an amount as a jury may determine and in excess of the minimum jurisdictional limit of this Honorable Court.

(iii)    For exemplary and punitive damages against all Defendants, in an amount as a jury may determine to halt such conduct.

(iv)    For the costs of this suit, including attorney's fees; and

(v)     For such other and further relief to which they may be entitled and as this Honorable Court may deem just and proper.

*[Signature block appears on following page]*

Respectfully submitted,

                           **MOTLEY RICE LLC**

              By:     s/ Kevin R. Dean
                      Kevin R. Dean
                      *Federal Bar No.  8046*
                      W. Taylor Lacy
                      *Federal Bar No.  9929*
                      28 Bridgeside Boulevard
                      Mount Pleasant, South Carolina 29464
                      (843) 216-9000
                      (843) 216-9450 (Facsimile)
                      kdean@motleyrice.com
                      wlacy@motleyrice.com
                      *ATTORNEYS FOR PLAINTIFFS*

                      JOSEPH P. MCLEAN
                      *Federal Bar No. 1398*
                      CLARKE, JOHNSON, PETERSON & MCLEAN, P.A.
                      Post Office Box 1865
                      Florence, South Carolina 29503
                      (843) 669-2401
                      (843) 662-1779 (Facsimile)
                      jmclean@cjpmlaw.com
                      *ATTORNEY FOR PLAINTIFFS Linda Moore, in her capacity as*
                      *Personal Representative of the ESTATE OF MELISSA M. LAMB,*
                      *and in her capacity as guardian for JL a minor Ken Moore and Bree*
                      *Moore, as parents and natural guardians of AM, a minor; and*
                      *Steven Walker and Crystal Walker, parents and natural guardians*
                      *of AW, a minor*

                      Brad D. Hewett
                      *Federal Bar No. 10388*
                      MIKE KELLY LAW GROUP, LLC
                      500 Taylor Street
                      P.O. Box 8113
                      Columbia, SC 29202
                      (803) 726-0123
                      bhewett@mklawgroup.com
                      *ATTORNEY FOR PLAINTIFFS Amber Crawford and Brook Lamb,*
                      *as Personal Representatives of the ESTATE OF JOEL E. LAMB, JR.*

Mount Pleasant, South Carolina
Dated:  February 25, 2016