IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| LINDA MOORE, et al, ) | |
| ) | Civil Action No.: 4:16-cv-00581-RBH |
| Plaintiffs, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| CLUB CAR, LLC and CURTIS ) | |
| INSTRUMENTS, INC., ) | |
| ) | |
| Defendants. ) | |

Currently pending before the court is Defendant Curtis Instruments, Inc.'s Motion to Dismiss Plaintiffs' Complaint [ECF #10]. Both parties have had the opportunity to extensively brief the issues raised in the Motion to Dismiss, and this Court has thoroughly considered all pleadings and memoranda filed by the Parties, including Plaintiffs' Response in Opposition to the Motion to Dismiss [ECF #25], Defendant's Reply to Response to Motion [ECF #27], and Plaintiff's Sur-Reply [ECF #30], as well as all evidentiary filings submitted, and affidavits, attachments and depositions.[1] This matter is now before the Court for review and issuance of an Order.

**Factual Background and Procedural History**

As alleged in the Complaint, on April 20, 2014, Melissa M. Lamb and her husband, Joel E. Lamb, were staying in a rental property located at 215-B Calhoun Drive, Garden City, South Carolina. [ECF #1, p. 1]. At some point during the early hours of that morning, an electric

---

[1] Under Local Civil Rule 7.09 (D.S.C.), "hearings on motions may be ordered by the Court in its discretion. Unless so ordered, motions may be determined without a hearing." Upon review of the briefs, the Court finds that a hearing is not necessary.

Precedent Club Car golf car (the "golf car"), manufactured by Defendant Club Car, LLC, parked in the rear of the ground floor garage, caught fire, eventually engulfing a portion of the rental property and causing the death of Mr. and Mrs. Lamb. [ECF #1, p. 2]. The Lambs rented the golf car from Woody's Beach Rentals, a local business. [ECF #1, p. 7]. Woody's Beach Rentals purchased the golf car from Ocean Lakes Family Campground. [ECF #1, p. 7]. Ocean Lakes Family Campground purchased the subject golf car from Defendant Club Car, Inc. in May of 2008. [ECF #1, p. 8]. The golf car's electronic system and components were manufactured, designed, tested and assembled by Club Car and Curtis Instruments. [ECF #1, p. 2]. Plaintiffs believe the golf car fire was caused by the design, manufacture, and assembly of the electrical systems and componentry within the golf car. [ECF #1, p. 14]. Specifically, Plaintiffs allege that the DC motor controller ("DCMC"), located within the golf car, was defective. [ECF #1, p. 19]. According to Plaintiffs, several minor children suffered serious physical and mental injuries as a result of the fire; specifically, minor child JL, minor child KT, minor child AM, and minor child AW. [ECF #1, p. 2]. Linda Moore is the personal representative of Mrs. Lamb's Estate and the grandmother and guardian of the minor children. [ECF #1, pp. 2-3]. Amber Crawford is the personal representative of Mr. Lamb's Estate. [ECF #1, p. 3]. Plaintiff Christopher Todd Tilton is the former husband to Mrs. Lamb and the father and natural guardian of one of the minor children, KT. [ECF #1, p. 3]. Plaintiffs Ken Moore and Bree Moore are the parents and natural guardians of AM. [ECF #1, p. 4]. Plaintiffs Steven Walker and Crystal Walker are the parents and natural guardians of AW. [ECF #1, p. 4].

On February 25, 2016, Plaintiffs brought a wrongful death and survival claims against

2

Defendants Curtis Instruments, Inc. ("Curtis Instruments") and Club Car, LLC ("Club Car") in federal court pursuant to 28 U.S.C. § 1332. Plaintiffs allege that Defendant Club Car is a Delaware limited liability company with its corporate headquarters and principal place of business located at 4125 Washington Road, Evans, Georgia, 30809. [ECF #1, p. 4]. Plaintiffs further allege that Defendant Club Car is registered to transact business in the state of South Carolina. [ECF #1, p. 4]. Defendant Curtis Instruments is a New York corporation with its corporate headquarters and principal place of business located at 200 Kisco Avenue, Mt. Kisco, New York, 10549. [ECF #1, p. 5]. However, Defendant Curtis Instruments is not registered to transact business in the state of South Carolina.

Instead, Plaintiffs allege that both Defendants are liable in tort for manufacturing, designing, assembling and placing a defective and unreasonably dangerous product in the stream of commerce. [ECF #1]. Additionally, Plaintiffs assert Defendants' failed to properly design, manufacture, and assemble the DCMC, thereby causing the fire and the subsequent injuries to Plaintiffs. Plaintiffs allege that Defendant Curtis Instruments had an active role in the manufacture, design and/or assembly of the golf car. [ECF #1].

On May 11, 2016, Defendant Curtis Instruments filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. [ECF #10-1]. Defendant Curtis Instruments argues that Plaintiffs cannot establish general jurisdiction because it is neither incorporated nor has its principal place of business in South Carolina, and because its contacts with South Carolina are not so substantial as to render it "at home" in South Carolina. [ECF #10-1, p. 9]. Defendant Curtis Instruments also argues that Plaintiffs cannot establish the existence

of specific jurisdiction over Curtis Instruments because its contacts, if any, with the forum state do not create a substantial connection with the forum state. [ECF #10-1, p. 11]. Finally, Defendant Curtis Instruments argues that even if Plaintiffs could prove specific jurisdiction, exercising such jurisdiction over Curtis Instruments is not constitutionally reasonable, and it does not comport with traditional notions of fair play and substantial justice.

In response, Plaintiffs argue that Curtis Instruments has availed itself of the privilege of conducting business in South Carolina, that Plaintiffs' claims arise out of and are related to Curtis Instrument's in-state activities, and that exercise of jurisdiction over Curtis Instruments is constitutionally reasonable. [ECF #25, p. 1].

## **Standard of Review**

Defendant files its motion pursuant to Rules 12(b)(2) of the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 12(b)(2) governs motions to dismiss for "lack of personal jurisdiction." A "federal district court has personal jurisdiction over a defendant if the state courts where the federal court is located would possess such jurisdiction." *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 176 (4th Cir. 2002). Thus, federal district courts exercise personal jurisdiction over a defendant to the extent provided by state law, including state general jurisdiction and long-arm statutes. *Id.* In South Carolina, the courts have held that the state's long arm statute is coextensive with the limits set by the due process clause, therefore the statutory inquiry merges with the constitutional inquiry. *Carefirst of Maryland, Inc., v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396-97 (4th Cir. 2003).

Personal jurisdiction is exercised as either "general jurisdiction" or "specific jurisdiction."

4

The analytical framework to determine the existence of minimum contacts differs according to the basis for jurisdiction. *Hamburg Sudamerikanische Dampfschiffahrts Gesellschaft KG v. Texport, Inc.*, 954 F. Supp. 2d 415, 420 (D.S.C. 2013). General jurisdiction exists where a defendant's contacts are "continuous and systematic" such that it may be haled into court on any claim. *Helicopteros Nacionales deColombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984); *see also Hamburg*, 954 F. Supp. 2d at 420 ("[w]hen the cause of action does not arise out of the defendant's contacts with the forum . . . general jurisdiction may be exercised upon a showing that the defendant's contacts are of a 'continuous and systematic' nature."). Specific jurisdiction exists, however, when the suit against the defendant arises out of its specific contacts with the forum state or is related thereto. *Helicopteros*, 466 U.S. 408, 248 at n.8. In analyzing a case under the specific jurisdiction standard, there must be some act by which the defendant purposefully availed itself of the privilege of conducting activities with the forum state. *See Hamburg*, 954 F. Supp. 2d at 420 ("[w]hen a cause of action arises out of a defendant's contacts with the forum, a court may seek to exercise specific jurisdiction over that defendant if it purposefully directs activities toward the forum state and the litigation results from alleged injuries that arise out of or relate to those activities."). If a defendant's conduct or connection with the forum state are such that he should reasonably anticipate be haled into court in that jurisdiction, then the test for "minimum contacts" sufficient to subject that defendant to specific jurisdiction in the forum state has been met. *Id.* at 420. Furthermore, a single act can support jurisdiction if that act has a "substantial connection" with the forum and gives rise to or figures prominently in the cause of action under consideration. *Campbell v. Johnson & Towers, Inc.*, 123 F. Supp. 2d 329, 335 (D.S.C. 1999).

Here, Curtis Instruments is a non-resident defendant. Whether a court may exercise personal jurisdiction over a nonresident defendant involves a two-step analysis. First, this Court must determine whether the South Carolina long arm statute applies; second, it must evaluate whether the nonresident's contacts in South Carolina are sufficient to satisfy due process. *ESAB Group., Inc., v. Zurich Ins. PLC*, 685 F.3d 376, 391 (4th Cir. 2012). The Due Process Clause permits personal jurisdiction over a defendant in any state with which the "defendant has 'certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014). A court may assert general jurisdiction over a foreign corporation when its affiliation is so "continuous and systematic" as to render that corporation at home in the forum state, while specific jurisdiction relies upon the affiliation between the forum and the underlying controversy. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). South Carolina's long-arm statute has been construed to extend to the outer limits afforded by the Due Process Clause; accordingly, the dual jurisdictional requirements merge into a single inquiry as to whether the defendant has "minimum contacts" with the forum state.[2] As discussed in this Order, the framework for determining whether minimum contacts exists with the forum state differs

---

[2] Plaintiffs submit that under South Carolina's long-arm statute, S.C. Code Ann. § 36-2-803, at least four subsections provide a basis for jurisdiction: (1)transacting any business in this State; (3) commission of a tortious act in whole or in part in this State; (4) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State; and (8) production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed. [ECF #25, p. 19]. Defendant contends that it is unnecessary to address the long-arm statute separate and apart from the Due Process analysis. [ECF #27, p. 6, n. 3]. Regardless, the evidence submitted along with the allegations in the Complaint satisfy the requirements of the long-arm statute.

6

depending on whether general or specific jurisdiction is alleged. *Hamburg Sudamerikanische Dampfschiffahrts Gesellschaft KG v. Texport, Inc.*, 954 F. Supp. 2d 415, 419–20 (D.S.C. 2013). A defendant's contacts with the forum state are measured at the time the claim arose. *Id.* at 420. If a court determines that a defendant has certain minimum contacts with the forum state, then the Court must consider whether the exercise of jurisdiction would comport with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

## Discussion

### A. Burden of Proof

Defendant Curtis Instruments and Plaintiffs disagree on the applicable burden of proof at this stage in the litigation. The plaintiff has the burden of proving federal jurisdiction is proper. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *see generally Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). At the pretrial stage, the burden of proving personal jurisdiction over a nonresident is met by making a prima facie showing of jurisdiction in either complaint or affidavits. *Luberda ex rel. Luberda v. Purdue Frederick Corp.*, No. 4:13-CV-00897, 2014 WL 1315558, at *2 (D.S.C. March 28, 2014). However, when a defendant moves to dismiss for lack of personal jurisdiction, a plaintiff must ultimately prove by a preponderance of the evidence that jurisdiction is proper. *New Wellington Financial Corp. v. Flagship Resort Development Corp.,* No. 4:13-00897, 416 F.3d 290, 294 (4th Cir. 2005) (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). When evaluating whether a plaintiff has met its burden of proving personal jurisdiction, the Court may consider the pleadings, affidavits, and other supporting documents presented to it. *Masselli & Lane, PC v. Miller & Schuh, PA*, No. 99-2440, 2000 WL

7

691100, at *1 (4th Cir. May 30, 2000).

Plaintiffs cite to the general rule that at the pre-trial stage, plaintiffs must only make a prima facie showing that personal jurisdiction exists. *See Ashmore v. Williams*, No. 8:15-CV-03633, 2016 WL 4475043, at *2 (D.S.C. Aug. 25, 2016) (noting that when a court decides a Rule 12(b)(2) motion without conducting an evidentiary hearing or without deferring ruling pending jurisdictional evidence at trial, and instead relies upon the complaint and affidavits alone, the burden of proof is to make a prima facie showing to survive a jurisdictional challenge).

Defendants argue that Plaintiffs must prove the existence of personal jurisdiction by a preponderance of the evidence, because at this stage, the parties have conducted or otherwise engaged in jurisdictional discovery, including the production of documents and depositions.[3] Defendants cite to *Hamburg Sudamerikanische Dampfschiffahrts Gesellschaft KG v. Texport, Inc.*, 954 F. Supp. 2d 415, 419–20 (D.S.C. 2013), a district court case that determined the plaintiff had to establish personal jurisdiction by a preponderance of the evidence because the parties engaged in jurisdictional discovery. *See also Brown v. Geha-Werke GmbH*, 69 F. Supp. 2d 770, 774 (D.S.C. 1999) (concluding that where the parties provided evidence to the court beyond that of pleadings and affidavits, the jurisdictional information before the court was more like that presented at an evidentiary hearing and less like the jurisdictional allegations in a complaint). The Fourth Circuit recently affirmed a district court's decision to hold a plaintiff to the preponderance of the evidence standard where the district court conducted a hearing, but the parties did not offer

---

[3] Plaintiffs requested an extension of time to file their response to this Motion in order to conduct jurisdictional discovery, including the receipt of responses to such discovery, which Defendants agreed to provide. [ECF #14]. The Court granted this extension on May 26, 2016. [ECF #15].

8

additional live testimony and evidence. *Grayson v. Anderson*, 816 F.3d 262 (4th Cir. 2016). In *Grayson*, the parties had participated in the full discovery process, and part of the motion to dismiss was supported by excerpts from depositions, exhibits, affidavits, and other evidence. *Id.* at 269. The Fourth Circuit first explained that the term "evidentiary hearing" does not automatically involve or require live testimony. *Grayson*, 816 F.3d at 268 (quoting *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 676 (1st Cir. 1992) (stating that in the context of personal jurisdiction, "not all 'evidentiary hearings' . . . involve evidence 'taken orally in open court.'")). The Fourth Circuit then reasoned that even without an evidentiary hearing, a district court can hold a plaintiff to the burden of proving facts by a preponderance of the evidence as long as the parties were afforded a fair opportunity to present both relevant jurisdictional evidence and legal arguments. *Grayson*, 816 F.3d at 268 ("if the court deems it necessary or appropriate, or if the parties so request, it may conduct a hearing and receive, or not, live testimony.").

Here, the parties have provided deposition testimony, as well as affidavits, and business documents from Defendant in order to determine the jurisdictional question before the Court. Neither party has requested additional time to complete more discovery or to participate in an evidentiary hearing in order to submit additional live testimony.[4] Consequently, this Court agrees with the Defendant that it has more than affidavits and pleadings with which to determine whether personal jurisdiction exists. Accordingly, even under the more rigorous standard of proving personal jurisdiction by a preponderance of the evidence, Plaintiffs' claims against Curtis

---

[4] In their sur-reply, Plaintiffs simply state in a footnote, "[t]o the extent the Court does not deny Curtis's motion based upon the pleadings and exhibits provided to date, Plaintiffs respectfully request that an in-person evidentiary hearing be held." [ECF #30, p. 3, n. 5].

9

Instruments survive the motion to dismiss.

### B. Specific Jurisdiction

Defendant argues that Plaintiffs cannot meet their burden of proving the existence of specific jurisdiction over Curtis Instruments. In response, Plaintiffs point to their allegations, along with deposition testimony and the documents provided in jurisdictional discovery, to refute this allegation. Specifically, Plaintiffs argue that the allegations within the Complaint, along with propounded jurisdictional discovery conducted to date, establish specific jurisdiction is proper over Curtis Instruments. With respect to the exercise of specific jurisdiction, Plaintiffs argue that it is appropriate given: (1) the statutory language of the long-arm statute authorizes personal jurisdiction; (2) Curtis Instruments' substantial activities related to South Carolina, as well as its significant role in the design, manufacture, and sale of the DCMC satisfy the requirement for minimum contacts; (3) the Plaintiffs' claims "arose out of or relate to" Curtis Instruments' minimum contacts with the forum; and (4) there is no constitutional impediment to exercising jurisdiction. [ECF #25].

The Fourth Circuit evaluates the following factors to determine whether minimum contacts exists to support exercising specific jurisdiction: (1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of or are related to those activities directed at the State; and (3) whether the exercise of jurisdiction is constitutionally "reasonable." *ESAB Group, Inc. v. Zurich Ins.* PLC, 685 F.3d 376, 391-92 (4th Cir. 2012); *see also Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215-16 (4th Cir. 2001). This Court will consider these factors in turn.

10

    1. Purposeful Availment

Defendant first argues that Plaintiffs cannot meet the burden of proving specific personal jurisdiction because Curtis Instruments has not purposefully availed itself of the privileges of conducting activities with the forum state because it does not regularly conduct or solicit business in South Carolina. The Fourth Circuit has offered several non-exclusive factors in considering this first prong: (1) whether a defendant maintains offices or agents in the forum state; (2) whether the defendant owns property in the forum state; (3) whether the defendant reached into the forum state to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the forum-state; (5) whether the parties contractually agreed that the law of the forum state would govern disputes; (6) whether the defendant made in-person contact with the resident of the forum state regarding the business relationship; (7) the nature, quality, and extent of the parties' communications about the business being transacted; and (8) whether the performance of contractual duties was to occur within the forum. *Consulting Eng'rs Corp v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009). Relying upon an affidavit provided by Dennis Houghton, the Vice President of Quality Assurance, Curtis Instruments asserts that it does not maintain offices or agents in South Carolina, it does not own property in South Carolina, it does not maintain any accounts in South Carolina, it manufactured the specific model of the DCMC at issue to Club Car (a company located in Georgia), but not to any South Carolina customers,[5] it does not know the location of its products after that point of sale, its advertising

---

[5] In their brief, Plaintiffs point out that Club Car, located in Evans, Georgia, is less than ten miles from the South Carolina border.

efforts are directed at European and Asian publications, its employers do not travel to South Carolina, and it does not solicit or pursue business in South Carolina.[6] Further it does not appear that Curtis Instruments agreed to select South Carolina as the appropriate forum to settle its disputes pursuant to any contract at issue. Curtis Instruments also asserts that very little of its total profits derive from sales in South Carolina. [ECF #10; ECF #27].

Plaintiffs refute that Defendant did not purposefully avail itself of the privileges of conducting activities within the forum state. Plaintiffs took the deposition of Mr. Steven Waite, the director of sales for the southeast region of the United States and the 30(b)(6) designee for Curtis Instruments, on July 26, 2016. According to Mr. Waite, 1515 is the specific model number of the "DCMC" that Curtis Instruments has specifically designed for the Precedent Club Car, the golf car at issue in this case. [Dep. of Steven Waite, 11:11-14, July 26, 2016]. However, besides the 1515 model, Curtis Instruments sells other components to Club Car, including the 1204, 1205, 1510A, 1268, 1236 model DCMCs. [Dep. of Steven Waite, 13:1-10, July 26, 2016]. Furthermore, Curtis Instruments regularly sells the 1204 DCMC to Linde-Baker (now part of KION Group), a company located in South Carolina. [Dep. of Steven Waite, 14:3-12, July 26, 2016]. Curtis Instruments also regularly sells its products, including DCMCs to JH Global, a company located in South Carolina. [Dep. of Steven Waite, 15:22-25; 16:1-18, July 26, 2016]. Mr. Waite has traveled to South Carolina on behalf of the company approximately four to six times in the last ten years. [Dep. of Steven Waite, 14:17-23, July 26, 2016]. While Curtis Instruments has not sold

---

[6] Mr. Houghton's Affidavit essentially tracks the language of the factors listed in *Consulting Eng'rs Corp v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009).

the exact model DCMC (1515) to JH Global that was involved in the subject incident, it sold other models, including the 1268 model, to JH Global, a South Carolina company. [Dep. of Steven Waite, 17:12-25, July 26, 2016].

Aside from actually selling its products in South Carolina, Mr. Waite confirmed that, with respect to the specific model number of the DCMC at issue, the company sold the DCMC to Club Car knowing it would be installed in golf cars and distributed across all fifty states, including South Carolina. [Dep. of Steven Waite, 39:1-7, July 26, 2016]. Mr. Waite acknowledged that the company is aware that Club Car is approximately five miles from the border of South Carolina. [Dep. of Steven Waite, 25:21-24, July 26, 2016]. Mr. Waite also confirmed that it was foreseeable by Curtis Instruments that the golf cars would be sold to customers in the state of South Carolina. [Dep. of Steven Waite, 63:19-25; 64:1-4, July 26, 2016].

Plaintiffs also rely upon business documents, provided by Defendant, that reflect Curtis Instruments conducted approximately 740 business transactions with customers located in South Carolina from 2007 through February of 2016. [ECF #25, Ex. 8]. During this same time period, Curtis Instruments generated approximately $1.7 million in revenue in sales to these customers. [ECF #25, Ex. 8]. Of these sales, Plaintiffs have established that a significant number of these transactions involved the sale of substantially similar DCMCs, the component that Plaintiffs argue was the proximate cause of the fire. [ECF #25, p. 7]. Defendant Curtis Instruments disputes that this is the relevant time inquiry (2007 to 2016) to review its business contacts, arguing that instead it is only up to and including the date of the subject incident (April 2014); and points out that in what they believe to be the relevant time frame, it sold products to five customers in South

13

Carolina, generating only $78,000 in revenue from April 2013 to April 2014. [ECF #10]. At least 3,300 club car vehicles using the 1515 DCMC were sold in South Carolina from 2012 through 2014, generating approximately $350,000 in revenue for Curtis Instruments. [ECF #25: Ex. 3; Ex. 4]. Furthermore, Curtis Instruments apparently had a number of staff members and employees engaged in servicing customers located in South Carolina.

      Even considering a limited time period inquiry up to April 2014, this Court finds that Plaintiffs have provided sufficient evidence to establish by a preponderance of the evidence that Curtis Instruments has purposefully availed itself of the privileges of conducting activities in South Carolina, thereby satisfying the first prong of the specific jurisdiction analysis. This Court also agrees that this information establishes the requisite "regular flow" or "regular course of sales" in South Carolina such that the "stream of commerce plus" test is satisfied. Placing goods in the stream of commerce will generally not subject a corporation to jurisdiction; however when coupled with the expectation that those goods will be purchased by consumers in the forum is evidence of purposeful availment. *Burger King Corp.*, 471 U.S. at 472. Placement of goods into the stream of commerce with the expectation that these goods will be purchased by consumers within the forum state may indicate purposeful availment. *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 881-882 (2011). The principal inquiry is thus whether a defendant's activities manifest an intention to submit to the power of the forum state. *Id.* at 882.

      As Plaintiffs point out, Curtis Instruments designed and manufactured the model 1515 DCMCs, ensured that they conformed to ISS and industry standards, as well as state and federal regulations, sold those to Club Car, LLC in Georgia, and knew Club Car, LLC would serve its

14

clients in South Carolina, less than ten miles away. [ECF #25, p. 29]. In fact, 3,300 Club Car Precedent Golf Cars containing the 1515 DCMC were sold in South Carolina between 2012 and 2014. [ECF #25-4]. Furthermore, Curtis Instruments had at least one sales director visit its South Carolina customers on more than one occasion in the past ten years. [ECF #25, p. 30]. Curtis Instruments actually has customers that it conducts business with in South Carolina, albeit the revenue produced may not make up a large portion of the company's entire revenue. While Curtis Instruments may not have directly sold the specific model DCMC to its South Carolina customers, Curtis Instruments still conducted some consistent volume of business in the time frame leading up to the incident, and specifically related to the sale of DCMCs, the component Plaintiffs allege caused the fire, that this Court agrees with Plaintiffs that Curtis Instruments purposefully availed itself of the privilege of conducting business in this state, even if it is not located here. Thus, with respect to whether Curtis Instruments has sufficient minimum contacts with this district, this Court finds that the "purposeful availment" condition has been met.

    2. Activities Arising Out of or Related to the Forum State

Next, Plaintiffs must prove that the claims at issue, here the fire and subsequent injuries and deaths, arose out of or relate to Curtis Instruments' activities directed at the forum state. Defendant again reiterates that Plaintiffs' claims do not arise out of any activities that are directed at South Carolina. [ECF #10-1, p. 16]. In response, Plaintiffs argue that Curtis Instruments' South Carolina activities, including the fact that roughly 3,300 Club Car golf cars containing 1515 DCMC controllers supplied, manufactured and designed by Curtis Instruments were sold in South Carolina between 2012 and 2014, suffices to meet this prong of the analysis. Further, while

Defendant points out that the 1515 model was not sold in South Carolina, and that a different DCMC model was sold in South Carolina, Plaintiffs have provided documents, such as Curtis Instrument's website, suggesting it marketed DCMCs in South Carolina that would be suitable replacements for the 1515 DCMC model installed in the subject golf car. [ECF #25, p. 32]. Plaintiffs allege that the DC Motor Controller, a part designed and manufactured by Curtis Instruments, caused the golf car to catch fire and ultimately lead to the death and bodily and mental injury of the Plaintiffs.  This Court finds that the deposition testimony, including that of Mr. Waite regarding Defendant's knowledge of the sale of golf cars with that model DCMC entering South Carolina, and the business records provided to this Court support Plaintiffs' argument that the alleged tort is sufficiently related to these activities.  The fact that Curtis Instruments was marketing its products, including a similar DCMC model to the one that Plaintiffs allege caused the actual fire, along with the information provided in the business documents made a part of this record, and evidence that 3,300 golf cars with the 1515 DCMC in them were sold in South Carolina from 2012 to 2014, provides a sufficient basis to find that this prong of the test has been satisfied. Plaintiffs's claims sufficiently arise out of or relate to activities directed at South Carolina to justify specific jurisdiction.

      3. Exercise of Jurisdiction is Constitutionally Reasonable

      Finally, Defendant alleges that this third prong of the analysis cannot be met, arguing essentially that because it is a New York corporation, South Carolina is an inconvenient forum. Defendant further argues that judicial economy would not be satisfied by allowing this suit to go forward against it, and that if dismissed, it would not remain involved in this lawsuit.  Courts

consider a variety of factors to consider the constitutional fairness of exercising jurisdiction, including (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Consulting Eng'rs Corp v. Geometric Ltd.*, 561 F.3d 273, 279 (4th Cir. 2009).

In this case, the tort occurred in South Carolina, thus this state has an interest in adjudicating the dispute in this forum. Additionally, as Plaintiffs point out, even if Curtis Instruments were not a defendant in this lawsuit, Defendant Club Car may seek indemnity from Curtis Instruments, or otherwise seek third party discovery from this company. Moving this lawsuit forward in this forum would provide convenient and effective relief to the multiple plaintiffs and also provide efficient resolution to the controversies and satisfy the shared interest of the several states. While it may be inconvenient for a company located in New York to litigate a dispute in another state[7], the other factors outweigh this concern. Accordingly, this Court finds that Plaintiffs satisfy the third prong of the analysis. Additionally, for these same reasons, the Court finds that the exercise of specific jurisdiction in this case comports with fair play and substantial justice. *Burger King*, 471 U.S. at 476. Thus, this Court finds that it may properly exercise specific jurisdiction over Curtis Instruments.

---

[7] While Curtis may prefer to be in New York, certainly they could not argue lack of personal jurisdiction in Georgia, which is probably just as convenient or inconvenient as South Carolina.

17

### C. General Jurisdiction

Defendant also argues that Plaintiffs cannot establish that this Court may exercise general jurisdiction over Curtis Instruments. Within their Brief, Plaintiffs focus solely on the analysis of specific jurisdiction over Curtis Instruments. [ECF #25; ECF #30]. The level of minimum contacts necessary to confer specific jurisdiction over a defendant is generally lower than that required to exercise general jurisdiction over a defendant. *Starling v. U.S.*, 664 F. Supp. 2d, 558, 567 (4th Cir. 2009).[8] Plaintiffs do not advance the argument that general jurisdiction exists, and without addressing the merits of Defendant's argument, this Court declines to consider whether this Court may exercise general jurisdiction over Defendant in this case.

### Conclusion

The Court has thoroughly reviewed the entire record, including the pleadings, Defendant's Motion to Dismiss [ECF #10], Plaintiffs' Response to the Motion [ECF #25], Defendant's Reply [ECF #27], Plaintiffs' Sur Reply [ECF #30], all applicable pleadings and exhibits provided to this Court, including deposition testimony, affidavits, attachments, and the applicable law. Plaintiffs have met their burden of proof by a preponderance of the evidence to establish specific jurisdiction over Defendant Curtis Instruments. For the reasons stated above, Defendant's Motion to Dismiss [ECF #10] is **DENIED.**

---

[8] A court may exercise general jurisdiction if a showing that the defendant's activities with the forum state are "continuous and systematic." *Hamburg Sudamerikanische Dampfschiffahrts Gesellschaft KG v. Texport, Inc.*, 954 F. Supp. 2d 415, 420 (D.S.C. 2013).

**IT IS SO ORDERED.**

Florence, South Carolina  s/ R. Bryan Harwell
March 9, 2017  R. Bryan Harwell
 United States District Judge